**DAYLIGHT GROCERY COMPANY, INC., Petitioner, Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.**

**No. 81–5679.**

United States Court of Appeals, Eleventh Circuit.

June 14, 1982.

Rehearing and Rehearing En Banc Denied Aug. 24, 1982.

William H. Andrews, Coffman, Coleman, Henley & Andrews, Mary W. Jarrett, Jacksonville, Fla., for petitioner cross-respondent.

Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., Penny Pilzer, Arlington, Va., for respondent cross-petitioner.

Before INGRAHAM *, HATCHETT and ANDERSON, Circuit Judges.

HATCHETT, Circuit Judge:

The primary question in this case is whether the National Labor Relations Board correctly reacted to objections filed by an employer to a unit determination and a union certification election. Finding no abuse of discretion by the Board, we enforce its order.

The petitioner, Daylight Grocery Company, Inc. (Company), filed its petition seeking review of the order of the National Labor Relations Board (Board), ordering the Company to bargain with Retail Store Employees Union Local 441, affiliated with United Food & Commercial Workers International Union AFL–CIO–CLC (Union). The Board filed a cross application seeking enforcement of its order.[1]

### FACTS

Daylight Grocery Company, Inc., is a Florida Corporation engaged in the retail food business. During the period in dispute, its supermarket division operated four retail stores in Duval County, Florida. On April 3, 1980, the Union filed a certification petition seeking to represent certain employees at all four stores. The Company refused to recognize the Union.

On April 22, 1980, a hearing was held before the Board's hearing officer. The Union sought a bargaining unit which would include all full-time and regular part-time employees, including head cashiers, produce managers, stock managers, and baggers. The bargaining unit would exclude meat department employees, salesmen, security guards, store managers, and assistant managers. The Company argued for a unit which would include full-time and regular part-time clerks and cashiers; and one which would exclude all store managers, head cashiers, produce managers, stock managers, meat market department employees, baggers, salesmen, security guards, and supervisors.

The unit sought by the Union would represent 107 employees. The unit proposed by the Company would represent about seventy employees. On May 11, 1980, the Board's regional director issued his decision; the unit would be substantially as the Union had requested. It would include baggers, mostly high school students who worked part-time on an as-needed basis, but would exclude produce department managers, stock managers, guards, and supervisors. Whether head cashiers were to be in the unit was left undecided. Whether they were supervisors would be determined later.

A secret ballot certification election was held on June 6, 1980. Of ninety-four employees who casted ballots, forty-four voted for representation, forty-three voted against representation, and seven ballots were challenged. After the challenged ballots were counted, forty-seven voted for representation, and forty-six voted against representation.

The Company raised objections to the unit determination and the election. The regional director rejected the Company's objections. The Company refused to negotiate. The Union brought unfair labor practice charges, and the Board ordered the employer to bargain with the Union.[2]

---

* Honorable Joe M. Ingraham, U. S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. The Board has statutory authority to determine bargaining units. Title 29 U.S.C. § 159(b).

2. The Board determined the employer violated section 8(a)(5) and (1) of the National Labor Act, 29 U.S.C. § 158(a)(1) and (5), by refusing to bargain with a certified union. The refusal to bargain is a procedural step to gain judicial review.

We must decide whether (1) the Board properly determined to include baggers in the bargaining unit; (2) whether threats to employees by a customer violated the laboratory conditions, and require a new certification election; (3) whether a ballot challenged by the Company was sufficiently clear to manifest voter intent; and (4) whether procedural objections which accused the Board of abuse of discretion and violation of due process are significant enough to require reversal.

## I. BAGGERS

The Company contends that the Board violated its own unit determination standards by including casual student employees in a bargaining unit which includes full-time produce clerks, stock clerks, and cashiers. The Company relies on the four-part test adopted by the Board in *Shady Oaks*, 229 NLRB No. 5 (1977). The Company insists the baggers failed to meet the *Shady Oaks* conditions. *Shady Oaks'* four factors for consideration are (1) regularity and continuity of employment; (2) tenure of employment; (3) similarity of work duties; and (4) similarity of wages, benefits, and other working conditions. 229 NLRB No. 5 at 54–55.

The Board contends that the baggers are properly included in the unit because the baggers share a community of interest with other employees and work in close contact with the other employees on a daily basis.[3] The Board also relies upon its considerable discretion in unit determination. *NLRB v. Southern Metal Service*, 606 F.2d 512, 514 (5th Cir. 1979); *NLRB v. H. M. Patterson & Sons*, 636 F.2d 1014, 1017 (5th Cir. 1981).[4]

The Board denies it has violated the teachings of *Shady Oaks*, and maintains that *Shady Oaks* was significantly modified by *Systems Auto Park*, 248 NLRB No. 144

(1980). Further, the Board denies any hard and fast standards in this area. Instead, it maintains it has applied a well articulated series of themes and considerations to be used to arrive at unit determination.

■ In reviewing these conflicting contentions, we must remember that this court's standard of review is "exceedingly narrow" when it reviews a challenge to a unit determination by the Board. *NLRB v. Southern Metal Services*, 606 F.2d 512, 514 (5th Cir. 1979). The Board's decision is vested with a large measure of discretion and is not to be disturbed unless the Board's discretion has been exercised "in an arbitrary or capricious manner." *Spartans Industries, Inc. v. NLRB*, 406 F.2d 1002, 1005 (5th Cir. 1969); *NLRB v. J. C. Penney Co.*, 559 F.2d 373, 375 (5th Cir. 1977).

■ The well established law of this circuit provides that the Board is not required to select the most appropriate bargaining unit for employees; by statute, it is only required to select a unit appropriate under the circumstances. 606 F.2d at 514, *see J. C. Penney*, 559 F.2d at 375.

■ Our review reveals that the Board selected an appropriate unit for the baggers under the circumstances. The Board determined that the baggers work is performed at the checkout counter, and is closely integrated with that of cashiers, who check out groceries. Further, they share the same direct supervision from the store managers and assistant managers. As a matter of practice, other unionized stores in the area are organized in units including baggers with clerks and cashiers. The burden was on the Company to show that the Board's determination was lacking substantial evidentiary support, arbitrary, capricious, or an abuse of discretion. *Southern Metal Services*, 606 F.2d at 514. The Company has failed to meet its burden.

---

3. For a thorough discussion and analysis of the various tests evolved and applied by the NLRB to determine community of interest see Comment, Date Certain Test is Preferable Standard for Enfranchising Temporary Employees for Union Certification Elections—*NLRB v. New England Lithographic Co.*, 589 F.2d 29 (1st Cir. 1978), 14 Suffolk U.L.Rev. 367 (1980).

4. The Eleventh Circuit has adopted the case law of the former Fifth Circuit as its governing body of precedent. This precedent is binding unless and until overruled or modified by this court en banc. *Bonner v. Prichard*, 661 F.2d 1206, 1209–11 (11th Cir. 1981) (en banc).

## II. THREATS

The day before the election, a "stranger," later identified as a customer named Kitchen—approached several employees in the store and said: "You had better vote for the Union," or "You had better vote yes." The Company argues that the comments made by this customer to several employees the day before the election created an atmosphere of fear and coercion which made a free and fair election impossible. The Company relies on *NLRB v. Tampa Crown Distributors*, 272 F.2d 470 (5th Cir. 1959), for the proposition that anonymous threats which create a climate of fear and coercion for the voters require a new election. *Tampa Crown* articulated a three-step analysis to determine an "atmosphere of fear": (1) Evidence establishes fear in the mind of voters; (2) that fear affected their votes; and (3) that had it not been for the fear, the results of the election might have been different. 272 F.2d at 473.

In its evaluation, the Board found that the remarks did not rise to the level of threats. Likewise, the Board argues that the remarks did not create an atmosphere of coercion and fear requiring a reversal.

▮ The Board has a wide degree of discretion in conducting elections and re-solving representation matters. *NLRB v. A. J. Tower Co.*, 329 U.S. 324, 330–31, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946); *NLRB v. Osborne Transportation, Inc.*, 589 F.2d 1275, 1279 (5th Cir. 1979). In a challenge to a Board decision in this area, the burden is on the objecting party to prove by specific evidence that the election results did not accurately reflect the unimpeded choice of the employees. *NLRB v. White Knight Mfg.*, 474 F.2d 1064, 1067 (5th Cir. 1973); *NLRB v. Golden Age Beverage Co.*, 415

F.2d 26, 29 (5th Cir. 1969). Our review of the record indicates that the Company did not meet this burden. Anonymous threats must be carefully weighed. 415 F.2d at 30. Only when such threats result in creating an atmosphere among voting employees of confusion and fear of reprisal should the election be overturned. 415 F.2d at 30. To do otherwise would merely encourage anonymously created incidents. *NLRB v. Monroe Auto Equipment*, 470 F.2d 1329, 1332 (5th Cir. 1972).

▮ It was determined that the "stranger" was neither an agent of the Union nor the Company. Kitchen was merely a customer who advocated a pro-union position. The Board determined that in the absence of specific threats, it could not conclude that the electoral process had been prejudiced by a coercive atmosphere. The Company has not met its burden demonstrating this conclusion was error.[5]

## III. BALLOT CHALLENGE

▮ The Company next challenges a ballot which contain pencil marks in both the "Yes" and "No" boxes. The Company argues that the ballot should be disqualified because it fails to evidence the clear intent of the voter.

The Board, on the other hand, contends that the ballot manifests clear intent. A strong check mark is found in the "Yes" box, while only a small portion of a line, an obvious evidence of erasure, is found in the "No" box.

On review, our task is to determine whether the voter's intent has been clearly manifested. *NLRB v. Sauk Valley Manufacturing Co.*, 486 F.2d 1127, 1133 (9th Cir.

---

**5.** The Company's affidavits failed to set out a prima facie showing to the extent that they failed to demonstrate that fear affected the voters (step 2), and that but for that fear, the election results might have been different (step 3). The employer must show the vote was influenced by the threats to establish a prima facie showing.

In *NLRB v. Southern Metal*, 606 F.2d at 515, "the employer submitted an employee's affidavit stating another employee had told him the

day before the election that 'if you didn't vote for the Union and the Union loses' you would be a very unpopular fellow around here, so you better watch out . . . ."

The regional director overruled the employer's objection without a hearing, finding that it presented no "substantial and material factual issues" as to the effect of the conduct on the result of the election. It is not enough that threats be made, the affidavits must show that the threat had an impact on voting.

1973). After examining the ballot, it is apparent that the voter intended to vote for the Union. The check mark in the "Yes" box is clear and distinct, while the partial line in the "No" box is the obvious result of an attempt at erasure. We keep in mind that the statutory policy favors inclusion of ballots where intent can be determined. *Sauk*, 486 F.2d at 1136. Because intent is clear, this ballot must be included in the tally.

## IV. PROCEDURAL OBJECTIONS

The Company contends that the Board violated its own procedures in several ways which violated both the statutory and due process interest of the Company. The Company asserts that (1) the hearing officer violated his duty in failing to consider the Company's request for an extension; (2) the regional director violated the Company's rights when he granted a three day extension instead of the fourteen day extension requested by the Company; (3) the Board violated the Company's rights by giving inadequate notice (thirteen days) of the election date, and in failing to reschedule the election; and (4) the Board violated the Company's rights when it denied the Company a hearing on its post election objections.

The Board contends that the Company's procedural objections are without merit because (1) the award of an extension is discretionary and neither the hearing officer nor the Board abused his discretion; (2) the Company could not show that it had been harmed by the discretionary award of the three day extension it was granted by the regional director; (3) the Company received proper notice where it was within the time frame set by the rule, and the possible election date was prominent in the record; and (4) the Board did not have to grant the hearing because a sufficient record was not set out by the Company, the Company did not set out its objections before the Board and, thus may not raise them on appeal.

Our review of the records supports the Board on all procedural issues. The Company's complaints are without merit.

### (a) *The Hearing Officer*

Even assuming that the hearing officer had a duty to exercise discretion in granting or denying an extension, the Company may not complain when in fact a three day extension of the briefing date was granted by the regional director, and the Company can make no positive showing of prejudice. *See NLRB v. O. K. Van Storage, Inc.*, 297 F.2d 74 (5th Cir. 1961). Under *O. K. Van*, questions preliminary to the establishment of a bargaining relationship are to be "expeditiously resolved, with litigious questions reserved for the proceedings for review or enforcement of Board orders." 297 F.2d at 76.

### (b) *Regional Director*

The Company presented no case law in support of its argument that the regional director was required to grant a fourteen day extension. The language of the statute ("may grant") is clearly permissive. Thus, the award is discretionary and the director may only be reversed on a showing of abuse of discretion. The Company has failed to show an abuse of discretion.

### (c) *Notice of Election*

The Board has wide discretion in scheduling elections. *Beck Corp. v. NLRB*, 590 F.2d 290, 293 (9th Cir. 1978). The Board may only be reversed on a showing of abuse of discretion which denies an employee the opportunity to vote. *See NLRB v. Sauk Mfg.*, 486 F.2d at 1132. The director's direction of election (issued May 12) notified the Company that an election would be held within thirty days, and it was held on the twenty-fifth day (June 6, 1980). Even assuming that its actual notice was limited to thirteen days, the Company has failed to demonstrate prejudice. Given the compactness of the Company's operation and the small number of employees, there was adequate time to both campaign and consider the issues.

*(d) A Hearing on the Full Record*

The Company next contends that the Board erred in ruling on a record which did not contain the full record relied upon by the regional director. Three affidavits were not sent to the Board. The Company relies on *NLRB v. Klingler Electric Corp.*, 656 F.2d 76 (5th Cir. 1981). While the Board relies on the distinction between a report under 29 C.F.R. § 102.67(d) or a decision under 29 C.F.R. § 102.69, we, however, do not have to reach the question of first impression offered by the Board, i.e., whether to distinguish between 29 C.F.R. § 102.67(d) and 29 C.F.R. § 102.69. Ordinarily such affidavits are confidential, but in this case the Company was aware of the contents of the affidavits.

■ Whatever error may have occurred in this process is harmless as a result of our holding that the affidavits did not set out a prima facie case. This conclusion is mandated by *NLRB v. Klingler Electric Corp.*, 656 F.2d 76, 79 (5th Cir. 1981), where affidavits which were relied upon by the regional director, but not forwarded to the Board were made available to this court upon review. After examination of the affidavits, the court concluded: "We find that none of them contained any information that would add weight to Klingler's case or stand the slightest chance of affecting the Board's action." 656 F.2d at 85. We do not see the case before us as a true *Klingler* case. In *Klingler*, the missing documents went to the issue of unit determination. In the absence of the affidavits, the record was devoid of any evidence on most material issues. 656 F.2d at 82. Under that statement of facts, the Board would have been unable to support its burden of showing substantial competent evidence on the record as a whole. Because the exclusion of such documents from the record would have presented a serious due process problem, we held that they were "documentary evidence" within the meaning of 29 C.F.R. § 102.69(g). 656 F.2d at 84. Accord *NLRB v. North Electric*, 644 F.2d 580 (6th Cir. 1981). This holding, however, did not require new proceedings before the Board

where this court was free to examine the documents on appeal and determined (1) the proper evidentiary base was present, and (2) nothing in the documents would have changed the Board's position if it had reviewed them. *Klingler*, 656 F.2d at 85.

In any event, a *Klingler* review establishes that the documents added no weight to Daylight's case. As previously held in this decision, those documents did not present a prima facie case that the elections had been improperly influenced. Therefore, the challenge on this procedural ground is rejected.

### CONCLUSION

Because the Company has failed to meet its burden and demonstrate that (1) the Board erred in including baggers in the unit; (2) threats violated the laboratory conditions required for the election; (3) the challenged ballot was insufficiently clear to demonstrate intent; and (4) various procedures adopted by the Board amounted to an abuse of discretion, the Board's order should be enforced.

ENFORCED.