# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 31, 2005          Decided January 27, 2006

No. 04-1421

CERIDIAN CORPORATION,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with
05-1041

———

On Petition for Review and Cross-Application for
Enforcement
of an Order of the National Labor Relations Board

———

*Donald W. Selzer, Jr.* argued the cause for petitioner. With him on the briefs was *Joseph P. Harkins.*

*Jeff Barham*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *John H. Ferguson*, Associate General Counsel, *Aileen A. Armstrong*, Deputy Associate General Counsel, and *Fred B. Jacob*, Supervisory Attorney.

Before: SENTELLE, GARLAND, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: Ceridian Corporation refused to meet with a union bargaining committee during nonworking hours, and at the same time refused to grant the employee members of the committee unpaid leave to attend bargaining sessions during working hours. The National Labor Relations Board concluded that, in so doing, Ceridian impermissibly interfered with its employees' choice of bargaining representatives. Because the Board's conclusion was reasonable and supported by substantial evidence, we deny Ceridian's petition for review and grant the Board's cross-petition for enforcement.

I

Ceridian is an information services company that provides a variety of employment services to other companies throughout the United States. One of its divisions offers assistance and counseling to employees of customer companies that contract with Ceridian. That division operates a call-in service center in Eagan, Minnesota, where its consultants provide advice to employees of customers on subjects ranging from substance abuse to emotional well-being. The center operates 24 hours per day, 7 days per week, 365 days per year. Consultants are divided into teams depending on their areas of expertise, and work the day, evening, or overnight shift.

Ceridian maintains a paid leave policy for its own employees called "Personal Days Off" (PDO). Under the policy, full-time employees can accrue up to four weeks of paid time off per year. Employees may use their PDO for whatever

purpose they wish, including vacation, illness, or personal business, as long as they obtain management approval. Ceridian also provides ten paid holidays per year, four of which are "floating" holidays that can be designated by the employee subject to management approval. Unpaid leave, other than for long-term absences, is not available to employees unless required by the Family and Medical Leave Act, 29 U.S.C. § 2901 et seq. Thus, PDO and the four floating holidays are employees' only options for discretionary leave. Employees who take time off in excess of their accrued PDO and floating holidays are subject to discipline, including discharge.

On June 5, 2003, the National Labor Relations Board (NLRB) certified Service Employees International Union 113 as the exclusive collective bargaining representative for approximately 130 employees at the Minnesota call-in center. The employees included day, evening, and overnight shift consultants, as well as other employees classified as clinical coaches, referral specialists, and network development specialists. The union -- the first to represent employees at the company -- put together a committee of six employees drawn from different work groups and shifts. The six employees volunteered to serve as the negotiating team in pursuit of a collective bargaining agreement with Ceridian.

The first bargaining session between the union's committee and Ceridian's management took place on September 22, 2003. All six employee representatives attended, along with a union business representative and union negotiator. One of the first topics of discussion was accounting for time spent by employees in bargaining sessions. The union requested that employees be permitted to take leave without pay, and indicated that it would compensate the employees for their lost wages. Ceridian refused this request and insisted instead that, in order to attend bargaining sessions, employees would have to take time from

their accrued PDO in full-day segments. Although Ceridian continued to insist that employee representatives use their PDO to attend bargaining sessions, after further discussion it agreed to allow them to take PDO in four-hour segments (for sessions that were limited in advance to half days), and to permit those who exhausted their accrued PDO to borrow against the following year's allotment for the purpose of attending bargaining sessions. Ceridian also tentatively agreed to schedule the next bargaining session in the evening, in order to lessen the PDO burden on the employee representatives, the majority of whom worked the day shift.

Following this first meeting, Ceridian replaced its lead attorney with another. In a subsequent telephone call to the union's business representative, new lead counsel cancelled the evening bargaining meeting. He then followed up with a letter, insisting that "all such meetings be conducted during normal business hours." Joint Appendix (J.A.) 114.

After Ceridian announced that it would require employees to use PDO for negotiating sessions and would refuse to negotiate during nonworking hours, three of the union's six employee representatives stopped regularly attending bargaining sessions. The other three continued to attend. Employee Jerry Buchko used more than one hundred hours of his PDO and two of his floating holidays to attend seventeen of eighteen sessions. Employees Robert Lodin and Kevin Kirley were able to attend most of the sessions without using PDO because they worked the evening and night shifts. After the eighteen sessions, all held during regular business hours on weekdays, the parties still had not reached a contract.

On December 18, 2003, the union filed an unfair labor practices charge with the NLRB. A hearing was held before an administrative law judge (ALJ), and the Board entered its

decision and order, adopting the ALJ's recommendations, on November 12, 2004. The Board found that Ceridian had violated sections 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5) and (1), by denying its employees unpaid time off to attend bargaining sessions during the workday, while simultaneously refusing to bargain during nonworking hours. The Board therefore ordered Ceridian to grant the employee representatives unpaid leave to attend negotiating sessions held during working hours, or, in the alternative, to schedule bargaining at mutually agreed-upon times when the employees were not scheduled to work. *See Ceridian Corp. & SEIU Local 113*, 343 NLRB No. 70, 2004 WL 2604608, at *13 (Nov. 12, 2004).

Ceridian now petitions for review, and the Board cross-petitions for enforcement of its order.

II

Under the National Labor Relations Act (NLRA), employees have a "fundamental right" to "select representatives of their own choosing for collective bargaining or other mutual protection without restraint or coercion by their employer." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33 (1937).[1]

---

[1]Section 7 of the NLRA grants employees the right "to bargain collectively through representatives of their own choosing." 29 U.S.C. § 157. Section 8(a)(1) makes it an unfair labor practice "to interfere with . . . the exercise of the rights guaranteed" in section 7. 29 U.S.C. § 158(a)(1). And section 8(a)(5) makes it an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). *See also* NLRA § 1, 29 U.S.C. § 151 (declaring that "protecting the exercise by workers of full freedom of . . . designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment," is part of the "policy of the United States").

An employer may not take action that "effectively chills its employees' right to select their own bargaining representatives by preventing or discouraging those representatives from fully participating in . . . negotiations." *Procter & Gamble Mfg. Co. v. NLRB*, 658 F.2d 968, 977 (4th Cir. 1981). Ceridian challenges, on three grounds, the NLRB's conclusion that it interfered with its employees' choice of bargaining representatives.

1. We first consider Ceridian's contention that the Board's decision is "an unreasoned and inexplicable departure from its own precedent." Petr.'s Br. 19. As we have repeatedly held in considering this kind of challenge, an "agency's interpretation of its own precedent is entitled to deference." *Cassell v. FCC*, 154 F.3d 478, 483 (D.C. Cir. 1998); *see Boca Airport, Inc. v. FAA*, 389 F.3d 185, 190 (D.C. Cir. 2004); *U.S. Telecom Ass'n v. FCC*, 295 F.3d 1326, 1332 (D.C. Cir. 2002); *Global Crossing Telecomms., Inc. v. FCC*, 259 F.3d 740, 746 (D.C. Cir. 2001).

According to Ceridian, the Board's precedents in this area stand for the proposition that an employer is entitled to insist on conducting collective bargaining during business hours, as long as it gives employee representatives time off to attend negotiations. The Board contradicted its precedents, Ceridian argues, by holding that Ceridian was obligated to offer its employees not just time off, but *unpaid* time off, in order to attend bargaining sessions held during working hours. As Ceridian points out, it did permit its employees to take time off, although it required that the time come from the employees' paid leave accounts accrued under the company's PDO policy.

While they disagree as to their meaning, both Ceridian and the Board agree which of the Board's precedents are relevant: *Indiana & Michigan Elec. Co.*, 229 NLRB 576 (1977), *enforced*, 599 F.2d 185 (7th Cir. 1979); and *Milwhite Co., Inc.*, 290 NLRB

1150 (1988). At first glance, we find it difficult to see any inconsistency between *Indiana* and *Milwhite* on the one hand, and this case on the other. The same is true at second glance.

In *Indiana*, the Board held:

> We find that the Respondent's refusal to grant members of the Union's negotiations committee *uncompensated* leave to permit them to engage in bargaining during working hours, while at the same time refusing the Union's request to bargain during nonworking hours, is an unlawful interference with the Union's selection of its bargaining representatives.

229 NLRB at 576 (emphasis added). In *Milwhite*, the Board repeated and reaffirmed the above quotation from *Indiana*. *See Milwhite*, 290 NLRB at 1152-53. In the instant case, the Board announced precisely the same rule with respect to Ceridian.

Ceridian rightly notes that the issue of paid versus unpaid leave was not squarely presented in either *Indiana* or *Milwhite*. In *Indiana*, the employee representatives sought unpaid leave to attend negotiations, and the employer denied them any leave at all; in *Milwhite*, the employer refused to attend negotiations during working hours with an employee representative whose services it deemed essential, and at the same time refused to meet after working hours. At best, however, this makes Ceridian's case *distinguishable* from *Indiana* and *Milwhite*;[2] it does not render the Board's decision a *departure* from those cases. There are simply no grounds for concluding that the Board acted inconsistently with its precedents by requiring an employer who would not bargain after hours to provide

---

[2]Indeed, that was Ceridian's argument before the Board. *See Ceridian*, 343 NLRB No. 70, at *6.

"unpaid" leave during working hours, given *Indiana*'s repeated finding that the employer in that case violated the NLRA by refusing to provide employee representatives with "uncompensated" leave. *See Indiana*, 229 NLRB at 576-77.[3]

2. It is a bit imprecise, of course, to ascribe the source of Ceridian's distress to the fact that the Board required it to provide *unpaid* leave. Surely Ceridian would have been no happier (although presumably its employees would have been) had the Board required the company to provide *paid* leave for attendance at negotiating sessions. Rather, the gravamen of Ceridian's claim is that it was wrong for the Board to bar it from insisting that any leave come from an employee's accrued PDO -- leave that was paid, but finite.

This brings us to Ceridian's second line of attack: that "the Board's Decision constitutes an unauthorized and irrational policy judgment." Petr.'s Br. 19. In raising this argument, Ceridian once again must confront our deferential standard of review. The Supreme Court "has emphasized often that the NLRB has the primary responsibility for developing and applying national labor policy," and that courts therefore must accord its legal rules "considerable deference." *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 786 (1990). We must

---

[3]Ceridian notes that, in one paragraph, *Indiana* referred to the NLRA violation as the employer's refusal to allow "time off," unadorned by the adjective "unpaid" or "uncompensated." 229 NLRB at 576. By that point in the opinion, however, the Board had already referred -- five times -- to the employer's unlawful act as refusing "unpaid time off," "leave without pay," or "uncompensated leave." *Id*. The Board then went on to repeat those references three more times. *See id.* at 577. We are unable to attribute the Board's dropping of an adjective on the occasion cited by petitioner to anything other than, perhaps, its confidence that it had sufficiently made its point.

"uphold a Board rule as long as it is rational and consistent" with the NLRA. *Id*. at 787. "Like other administrative agencies, the NLRB is entitled to judicial deference when it interprets an ambiguous provision of a statute that it administers." *ITT Indus., Inc. v. NLRB*, 251 F.3d 995, 999 (D.C. Cir. 2001) (quoting *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536 (1992) (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984))).

Ceridian's argument is that, because an employer is not required to pay employees for time spent attending negotiations, and because Ceridian sees no meaningful difference between not paying employees and requiring them to use PDO to attend negotiations, it was irrational for the Board to find the company in violation of the NLRA. The Board's view, by contrast, is that even if an employer is not required to pay employees while they are participating in labor negotiations, there is a meaningful difference between refusing to pay employees and requiring them to deplete their finite leave allotments. The difference is that a union can compensate employee representatives for their lost pay (as the union offered to do here), but it cannot give them more leave than the employer permits. *See Ceridian*, 343 NLRB No. 70, at *12.

The distinction the NLRB draws is a reasonable one. As the Board concluded, Ceridian's policy significantly circumscribes the universe of employees who are able to serve as bargaining representatives, and thus interferes with its employees' choice of representatives. *See id.* Employees who need their PDO to accommodate substantial family responsibilities, for example, would not be able to serve. An employee who exhausted his annual PDO allotment on bargaining meetings[4] would have

---

[4]This can occur quite quickly. As noted above, employee-representative Jerry Buchko used more than one hundred hours of his

nothing left with which to meet his family responsibilities, because the union cannot give him additional time off. And Ceridian is simply wrong in arguing that it eliminated this problem by modifying its policy to permit employees who exhaust their annual PDO to borrow from the following year's allotment. Ceridian's modification permitted such borrowing only for the purpose of continuing to attend negotiating sessions; it provided no relief for those needing leave for any other reason. Thus, an employee representative with a sick relative would still be out of leave and out of luck.

3. Lastly, Ceridian questions the record support for the Board's finding that it violated the NLRA. As with the company's other contentions, our role in reviewing this claim is limited. We must uphold a finding of the Board as long as it is "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 160(e). In making that determination, "we ask only whether on this record it would have been possible for a reasonable jury to reach the Board's conclusion," giving "substantial deference to the inferences drawn by the NLRB from the facts." *Antelope Valley Bus Co. v. NLRB*, 275 F.3d 1089, 1093 (D.C. Cir. 2002) (internal quotation marks omitted).

We find that substantial evidence supports the Board's conclusion that Ceridian's policy of requiring employees to use PDO to attend negotiating sessions during the workday, while simultaneously refusing to negotiate during nonworking hours, interfered with the employees' selection of their representatives. As described above, it was reasonable for the Board to infer that a policy that required the use of finite leave would chill participation by those with family or other responsibilities. That

PDO and two of his floating holidays to attend seventeen of the eighteen sessions held in this case, after which the parties still had not reached agreement.

inference is supported by the fact that the union lost half of its negotiating team after Ceridian announced the policy.

Ceridian contends that the Board's finding is undermined by its failure to consider the company's justifications for its policy. But the Board neither ignored Ceridian's arguments nor suggested that no set of circumstances could warrant the denial of uncompensated leave to attend negotiating sessions. Rather, the Board simply found that the circumstances proffered by Ceridian were insufficient to justify its interference with its employees' choice of bargaining representatives. *See Ceridian*, 343 NLRB No. 70, at *12; *cf. Procter & Gamble*, 658 F.2d at 978 (enforcing a similar Board order after concluding that "[t]here is no indication that the uncompensated leave remedy will be abused in a manner disrupting Procter & Gamble's business operations"); *Indiana*, 599 F.2d at 191 (holding that the Board could "reasonably conclude that any economic hardship or managerial disruption suffered by the Company" in allowing an employee unpaid time off to attend negotiations "is manifestly less than that recognized by the Company from sick leave and vacation time for employees arrived at through collective bargaining").

The first justification proffered by Ceridian is that, because it had no prior "practice or policy that would entitle employee representatives to intermittent unpaid time off for the purpose of attending negotiations," Petr.'s Br. 25, the Board's decision "conferr[ed] a preferred status on employees who choose to engage in union activities while disadvantaging those who do not." Petr.'s Reply Br. 17. We do not see how employee representatives are "preferred" over their co-workers by permitting them to use uncompensated leave rather than PDO to represent the interests of those co-workers in bargaining sessions, nor how the co-workers are "disadvantag[ed]" by such an arrangement. Moreover, it is no surprise that the company

did not have a prior policy or practice on the subject, since this was the first time a union had been certified to represent Ceridian's employees. But the absence of such a policy -- or even a self-imposed policy to the contrary -- cannot trump the requirements of the NLRA. As the Supreme Court held in the *Jones & Laughlin* case, "[e]mployees have as clear a right to organize and select their representatives for lawful purposes as the [employer] has to organize its business." 301 U.S. at 33; *cf. Procter & Gamble*, 658 F.2d at 978 (holding that the options available to the employer under the NLRB's remedial order -- including "leeway . . . to meet evenings or weekends rather than to grant any uncompensated leave" -- "demonstrate that the Board's order does not impose a new contractual provision upon the parties," but rather "serves only to remedy the unfair labor practices found in this case").

The second justification asserted by Ceridian is two-fold: adherence to the PDO policy is required, the company avers, "to ensure that staffing levels remain predictable and that customers receive effective and timely service." Petr.'s Br. 27 (quoted words capitalized in original). Like the Board, we find this argument "unpersuasive." *Ceridian*, 343 NLRB No. 70, at *12. With respect to predictability, Ceridian has offered no reason to believe that its staffing projections cannot be adjusted to take into account planned bargaining sessions; indeed, the company's willingness to permit year-ahead borrowing of PDO to attend such sessions indicates that this is not a significant problem. And with respect to customer service, there is nothing unreasonable in the Board's view that the absence of six (or fewer) employees, out of a workforce of approximately 130, is likely to have "minimal" impact. *Id.* In any event, the impact on Ceridian is nothing compared to the impact on employers that the Board found insufficient in *Indiana* and *Milwhite*. *See Indiana*, 229 NLRB at 576 (rejecting the employer's justification that an employee representative was a

troubleshooter "whose presence could not be spared" for the requested eleven days of bargaining); *Milwhite*, 290 NLRB at 1150 (rejecting the employer's justification that an employee representative was one of only two bulldozer operators and that his absence would leave "about 50 percent of the production employees" idle while the representative was attending negotiations).

Finally, and perhaps most importantly, Ceridian could have minimized the impact of granting unpaid leave by scheduling some of the bargaining sessions during nonworking hours. Indeed, the impact could have been "avoided all together by bargaining weekend days[,] for example," when employees would have needed neither unpaid leave nor PDO to attend. *Ceridian*, 343 NLRB No. 70, at \*12. Yet, Ceridian offered no rationale other than "intrusion into [the] personal time" of its management team for not making that accommodation. J.A. 114.[5] There was nothing unreasonable in the Board's conclusion that this rationale was insufficient to justify Ceridian's interference with its employees' choice of bargaining representatives.

III

In *Indiana*, the NLRB made clear that employers have options with respect to scheduling bargaining sessions and granting employee representatives leave to attend those sessions:

> We do not suggest that an employer is compelled to yield to a union's request for negotiations outside

---

[5]Ceridian also professed concern for intruding upon the personal time of the employee representatives, but since the employees were the ones who proposed bargaining during nonworking hours, this argument carries little weight.

14

> normal business hours. It is free to insist on bargaining during the working day, if it prefers, as the Respondent did here. If it makes this choice, however, it cannot at the same time refuse to allow unpaid time off to union representatives on the bargaining committee . . . . Alternatively, the Employer is free to acquiesce in the Union's request to bargain during nonworking hours in order to reduce the amount of uncompensated leave . . . and to minimize the effects of [employees'] unavailability during their regular working hours . . . . However, the Respondent cannot have it both ways.

*Indiana*, 229 NLRB at 576. The Board made clear that Ceridian had those same options in this case. *See Ceridian*, 343 NLRB No. 70, at *12. And here, as in *Indiana*, it was the employer's "attempt . . . to have it both ways that constitute[d] the violation of the Act." *Indiana*, 229 NLRB at 576. Accordingly, Ceridian's petition for review is denied, and the Board's cross-petition for enforcement of its order is granted.

*So ordered*.