# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 9, 2017          Decided June 6, 2017

No. 15-1445

AMERICAN BAPTIST HOMES OF THE WEST, DOING BUSINESS AS
PIEDMONT GARDENS,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

SERVICE EMPLOYEES INTERNATIONAL UNION, UNITED
HEALTHCARE WORKERS - WEST,
INTERVENOR

Consolidated with 15-1501

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

*David S. Durham* argued the cause for petitioner. With him
on the briefs was *Christopher M. Foster*.

*Kellie J. Isbell*, Attorney, National Labor Relations Board,
argued the cause for respondent. With her on the brief were
*Richard F. Griffin*, *Jr*., General Counsel, *John H. Ferguson*,

Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel, and *Usha Dheenan*, Supervisory Attorney.

*David A. Rosenfeld* argued the cause for intervenor. With him on the brief was *Bruce Harland*.

Before: GARLAND, *Chief Judge*, and HENDERSON and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*:  American Baptist Homes of the West, which does business under the name Piedmont Gardens, fired a nursing assistant after an internal investigation into allegations that he was sleeping on the job. The assistant's union requested the names, titles, and statements of witnesses involved in the investigation. Piedmont Gardens refused to provide the requested information.

The dispute then became the subject of an unfair labor practice proceeding before the National Labor Relations Board (NLRB). The Board ultimately determined that Piedmont Gardens violated the National Labor Relations Act by withholding certain of the requested information, and it ordered the employer to produce that information to the union and refrain from violating the Act in the same manner in the future. Piedmont Gardens petitioned this court for review, and the Board filed a cross-application for enforcement of its order.

I

Under the National Labor Relations Act, an employer's duty to bargain with the representative of its employees includes the obligation "to provide information that is needed by the bargaining representative for the proper performance of its

duties." *NLRB v. Acme Indus. Co.*, 385 U.S. 432, 435-36 (1967).  In determining whether an employer is required to turn over information like witness names, the Board applies the *Detroit Edison* test,  under which it balances the union's need for the information against the employer's "legitimate and substantial" confidentiality interests.  *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 315, 318-20 (1979); *see Oil, Chem. & Atomic Workers Local Union v. NLRB*, 711 F.2d 348, 354 (D.C. Cir. 1983).  Applying *Detroit Edison* in this case, the Board concluded that Piedmont Gardens violated the National Labor Relations Act, 29 U.S.C. § 158(a)(1), (5), by refusing to provide the *names and titles* of three individuals who said they witnessed the nursing assistant sleeping on duty.  *Am. Baptist Homes*, 362 N.L.R.B. No. 139, at *8 (2015).  Piedmont Gardens does not appeal that determination.

Witness *statements* are another matter.  In *Anheuser-Busch, Inc.*, the Board held that an employer's "general obligation to honor requests for information" from a union "does not encompass the duty to furnish witness statements themselves." 237 N.L.R.B. 982, 984-85 (1978) (internal quotation marks omitted).  Applying the *Anheuser-Busch* rule to the witness statements in this case, the Board concluded that Piedmont Gardens' refusal to produce the statements of two of the witnesses did not violate the Act because the statements were exempt from disclosure under that rule. 362 N.L.R.B. No. 139, at *8.  That determination is also unchallenged on appeal.

At issue on this appeal are the statements of a third witness, charge nurse Lynda Hutton.  With respect to Piedmont Gardens' refusal to produce those statements, the Board found that the company violated the Act because they were not "witness statements within the meaning of *Anheuser-Busch*."  *Id.* at *1. That was so, the Board said, because Hutton's statements "were not provided under an assurance of confidentiality."  *Id.* at *9.

Rather, she "gave the statements because it was one of her job duties to do so." *Id.*

"We must uphold the judgment of the Board unless, upon reviewing the record as a whole, we conclude that the Board's findings are not supported by substantial evidence, or that the Board acted arbitrarily or otherwise erred in applying established law to the facts of the case." *Mohave Elec. Co-op., Inc. v. NLRB*, 206 F.3d 1183, 1188 (D.C. Cir. 2000). Piedmont Gardens disputes the Board's finding that Hutton was never given any assurance that her statements would be kept confidential. But substantial evidence in the record supports that finding, as well as the finding that the statements were motivated by Hutton's job duties and fear of punishment if she failed to report what another nurse had already reported, rather than by any promise of confidentiality. *See* J.A. 107, 110 & n.14.

Piedmont Gardens further asserts that the Board impermissibly departed from *Anheuser-Busch* by holding that the protection of that decision extends only to statements prompted by an assurance of confidentiality. But the Board reasonably read its subsequent cases as holding that such an assurance must have motivated the witness in order to bring the statement within the protection of *Anheuser-Busch*, *see El Paso Elec. Co.*, 355 N.L.R.B. 428 (2010), *enf'd*, 681 F.3d 651 (5th Cir. 2012); *N.J. Bell Tel. Co.*, 300 N.L.R.B. 42 (1990), *enf'd*, 936 F.2d 144 (3d Cir. 1991), and this Court defers to the Board's reasonable interpretation of its own precedent, *see Ceridian Corp. v. NLRB*, 435 F.3d 352, 355-56 (D.C. Cir. 2006). We note that all five Board members in this case, including the two dissenting members, read the Board's *El Paso Electric* precedent to require an assurance of confidentiality. 362 N.L.R.B. No. 139, at *9; *id.* at *10 n.12 (Member Miscimarra, dissenting); *id.* at *11 n.1 (Member Johnson, dissenting in part).

5

II

Although the Board applied *Anheuser-Busch* to resolve the unfair labor practice charges in Piedmont Gardens' case, it announced that prospectively it was overruling *Anheuser-Busch*'s blanket exemption for witness statements. 362 N.L.R.B. No. 139, at *1. "In future cases," the Board said, "when an employer argues that it has a confidentiality interest in protecting witness statements from disclosure, we shall apply the balancing test set forth in *Detroit Edison Co. v. NLRB . . .* as we do in all other cases involving assertions that requested information is confidential." *Id.*

Piedmont Gardens challenges the Board's decision to overrule *Anheuser-Busch*, notwithstanding that the decision will apply only in future cases. It acknowledges that a party generally lacks standing to challenge adjudicatory rulings that have not been applied to it. Oral Arg. Recording at 3:12-40; *see Am. Family Life Assur. Co. v. FCC*, 129 F.3d 625, 629 (D.C. Cir. 1997) (holding that "the mere precedential effect of an agency's rationale in later adjudications is not an injury sufficient to confer standing on someone seeking judicial review of the agency's ruling" (internal quotation marks and alteration omitted)); *see also Wis. Pub. Power v. FERC*, 493 F.3d 239, 268 (D.C. Cir. 2007); *Sea-Land Serv., Inc. v. DOT*, 137 F.3d 640, 648 (D.C. Cir. 1998). Nonetheless, it maintains that it has suffered the injury-in-fact necessary to establish standing for one particular reason (and for that reason only): The Board's order contains language directing Piedmont Gardens to "cease and desist from . . . [f]ailing and refusing to bargain in good faith with the Union by refusing to provide requested information that is relevant and necessary to the processing of a grievance." 362 N.L.R.B. No. 139, at *9. Piedmont Gardens fears that this means it could be subject not only to unfair labor practice

proceedings if it fails to follow the new rule, but to contempt proceedings as well. Oral Arg. Recording at 1:06-2:55; 3:12-40.

As it applies to Piedmont Gardens' duty to disclose witness statements, we read the language Piedmont cites as referring only to refusals that would violate the rule the Board actually applied in this case, that is, the *Anheuser-Busch* rule. The Board found it "appropriate to apply [its] new rule prospectively only," acknowledging that its decision "marks a departure from longstanding precedent, and the [r]espondent expressly relied on existing law under which its refusal to provide the witness statements was unquestionably lawful." 362 N.L.R.B. No. 139, at *7-8. The Board said nothing to suggest it intended to subject Piedmont Gardens – alone among all employers – to the possibility of contempt if its future conduct were unlawful only under the *Detroit Edison* balancing test. Nor did the Board's opinion contain any rationale that would support such an intent.

Counsel for both the Board and the union agree with our reading of the Board's cease-and-desist order, Oral Arg. Recording at 17:20-18:07; 28:20-30:00, although neither can ensure that the Board itself would construe the language this way. But given our reading and the absence of any argument to the contrary, an attempt to treat a future violation of the newly announced rule as having contravened the order would raise due process concerns. *Cf. FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012) ("A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required. . . . This requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment."). Indeed, given the absence from the Board opinion of any rationale for subjecting Piedmont Gardens to the risk of contempt for the future withholding of witness statements violative only of the *Detroit Edison* test, we could not uphold a

cease-and-desist order that did so.  *See Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001) ("A fundamental requirement of administrative law is that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action." (internal quotation marks omitted)).

We therefore can – and will – enforce the cited language in the cease-and-desist order only to the extent that it requires Piedmont Gardens to comply with the witness-statement disclosure requirements that the Board actually applied in this case: those of *Anheuser-Busch*.  In other respects, Piedmont Gardens must be treated as any other employer.  Because our holding eliminates any risk of the only injury that Piedmont Gardens asserts it will suffer due to the Board's adoption of the new rule, Piedmont lacks standing to challenge that portion of the Board's decision. *See Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011).  Accordingly, we express no opinion as to that challenge or to the merits of the new rule.

III

Piedmont Gardens' petition for review is denied in part and dismissed in part.  The NLRB's cross-application for enforcement of its order is granted as clarified.