[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 17-15498, 18-10198
_____

Agency No. 15-CA-070319

OUTOKUMPO STAINLESS USA, LLC,

Petitioner/Cross-Respondent,

versus

NATIONAL LABOR RELATIONS BOARD,

Respondent/Cross-Petitioner.

_____

Petitions for Review of a Decision of the
National Labor Relations Board
_____

(May 13, 2019)

Before WILSON, JILL PRYOR and TALLMAN,* Circuit Judges.

_____

* Honorable Richard C. Tallman, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

TALLMAN, Circuit Judge:

Outokumpu Stainless USA, LLC (the "Company") petitions for review of an order of the National Labor Relations Board ("NLRB" or the "Board"), which cross-applies for its enforcement.  We have jurisdiction under 29 U.S.C. §§ 160(e) & (f).  We deny the petition for review and grant the application for enforcement.

I

On April 30, 2012, the parties entered into a settlement agreement (the "Settlement Agreement") that resolved unfair labor practices charges filed by the AFL-CIO accusing the Company of implementing illegal anti-union policies to frustrate organizing efforts at one of its steel rolling mills in Alabama.  The Settlement Agreement required the Company to post a stipulated remedial notice (the "Notice") on its bulletin board and online intranet site for its employees.  The Settlement Agreement also required the Company to "comply with all the terms of the provisions of [the] Notice," which included revoking union-related rules for employee activity on employer time and expunging employee disciplinary records related to enforcement of those rules.

The Settlement Agreement further explicitly provided for default proceedings

> in case of non-compliance with any of the terms of this Settlement Agreement by the [Company] . . . .  [T]he General Counsel may file a motion for default judgment with the Board on the allegations of the complaint.  The [Company] understands and agrees that all of the

2

allegations of the complaint will be deemed admitted and it will have waived its right to file an Answer to such complaint. The only issue that may be raised before the Board is whether the [Company] defaulted on the terms of this Settlement Agreement.

In advance of posting the Notice on May 17, 2012, the Company posted a side letter ("Side Letter") on the bulletin board and intranet site that, among other things, (1) blamed the union for "prevent[ing employees] from exercising [their] right to vote and hav[ing] a choice," and (2) repeatedly emphasized that the Company had not been "found guilty" of labor law violations. The Side Letter also remained posted for the 60-day period that the Company was required to post the Notice.

Subsequently, the NLRB's Regional Director informed the Company that it believed the Side Letter constituted non-compliance with the terms of the Settlement Agreement, and thus the Board could set aside the Settlement Agreement and enter a default judgment against the Company for the original violations of the National Labor Relations Act, 29 U.S.C. § 158(a) ("Section 8(a)"). After a complex procedural history, the Board's general counsel eventually went forward with default proceedings on the union's original Section 8(a) charges of unfair labor practices by the Company under this theory of liability.

On November 16, 2015, the parties filed a joint motion and stipulation of facts and exhibits, requesting that the noncompliance issues be decided without a hearing based on the stipulated record. An administrative law judge ("ALJ") then

set aside the Settlement Agreement and entered a default judgment pursuant to the terms of that agreement.  The Board affirmed on appeal.

## II

We review the Board's factual findings for substantial evidence.  *N.L.R.B. v. Contemporary Cars, Inc.*, 667 F.3d 1364, 1370 (11th Cir. 2012) (citing 29 U.S.C. § 160(e)).  This is a narrow standard of review designed to allow disruption of the NLRB's decision only when the NLRB exercises its discretion "in an arbitrary or capricious manner."  *Id.* (citing *Daylight Grocery Co. v. N.L.R.B.*, 678 F.2d 905, 908 (11th Cir. 1982)).  "It is for the Board to regulate its own procedures and interpret its own rules, so long as it does not act unfairly or in an arbitrary and discriminatory manner," and we "give significant deference to the Board's chosen remedy."  *N.L.R.B. v. Goya Foods of Fla.*, 525 F.3d 1117, 1125–26 (11th Cir. 2008).  Moreover, the Board's "interpretation of its own precedent is entitled to deference."[1]  *Ceridian Corp. v. N.L.R.B.*, 435 F.3d 352, 355 (D.C. Cir. 2006); *see also Boch Imports, Inc. v. N.L.R.B.*, 826 F.3d 558, 568–69 (1st Cir. 2016) (same).

## III

We address two issues: (1) whether posting the Side Letter constituted "non-compliance with any of the terms of th[e] Settlement Agreement," and (2) if so, whether immediate entry of default judgment was permissible.  We hold that the

---

[1]    The Company's counsel did not dispute this proposition at oral argument.

Company's posting of the Side Letter constituted non-compliance with the terms of the Settlement Agreement, and that default judgment was thus proper under the plain terms to which the Company had previously agreed.

A

Non-compliance with the terms of a settlement agreement is a term of art in labor law that has existed for almost 50 years in the Board's precedent, *see, e.g.*, *Gould, Inc.*, 260 N.L.R.B. 54, 58 (1982) (holding that a side letter castigating the union in an attempt to influence employee voting undermines the purpose of a notice and thus amounts to "noncompliance with [the] terms" of a settlement agreement); *Arrow Specialties, Inc.*, 177 N.L.R.B. 306, 308 (1969), *enfd*. 437 F.2d 522 (8th Cir. 1971) (a company "had committed acts constituting non-compliance with the terms of a settlement agreement and had breached the agreement" by posting a similar side letter that "minimize[d] the effect of the Board's notice"), and is a principle that has been adopted by multiple circuits, including the Fifth Circuit prior to the separation of this Court, *see News-Texan, Inc. v. N.L.R.B.*, 422 F.2d 381, 384–85 (5th Cir. 1970); *N.L.R.B. v. Union Nacional De Trabajadores*, 611 F.2d 926, 930 (1st Cir. 1979) (citing *News-Texan* and invoking the principle against a union letter). Such non-compliance includes, among other things, posting a side letter that undermines the purpose and effectiveness of the remedial Board notice. *See Gould*, 260 N.L.R.B. at 57–58; *Arrow Specialties*, 177 N.L.R.B. at

5

308.  Such labor peace agreements also generally include applicable laws "at the time of the making of a contract . . . and form a part of the contract as if they were expressly incorporated into it."  *Siemens Power Transmission & Distrib., Inc. v. Norfolk S. Ry. Co.*, 420 F.3d 1243, 1251 (11th Cir. 2005); *see also Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000) ("Principles governing [contracts] apply to interpret settlement agreements.").  The rule is akin to the common-law implied covenant of good faith and fair dealing read into the performance of all contracts.  *See* Restatement (Second) of Contracts § 205 cmt. D (1981).

The Company cites two cases to the contrary where the Board held that side letters did not evidence sufficient non-compliance to sustain a violation, finding an employer had not breached the terms of a settlement agreement: *Littler Diecasting Corp.*, 334 N.L.R.B. 707 (2001), and *Deister Concentrator Co., Inc.*, 253 N.L.R.B. 358 (1980).  We defer to the Board's interpretation of its own precedent in holding that the Side Letter here is more similar to those posted in *Gould* and *Arrow* than those posted in *Little* and *Deister*.  *See Ceridian*, 435 F.3d at 355.  Indeed, the ALJ and all three of the Board's members in this case, including the dissenter, agreed that the Side Letter constituted non-compliance with the terms of the Settlement

6

Agreement under *Gould* sufficient to set aside the Settlement Agreement.[2]  *See*

*Outokumpu Stainless USA, LLC*, 365 N.L.R.B. 127 (2017) (dissent agreeing that

the Board could set aside the Settlement Agreement for non-compliance).

But even if we did not defer to the Board on this determination, we would

hold that the Side Letter constitutes non-compliance with the Settlement

Agreement's terms.  *See News-Texan*, 422 F.2d at 384–86.  The Side Letter, posted

and distributed before the Notice, blamed the union for delaying the election,

emphasized that the Company did nothing wrong, and suggested that the Company

had no other obligations under the Settlement Agreement.  The Side Letter thus

subverted the purpose and effectiveness of the Notice, constituting non-compliance

with the terms of the Settlement Agreement under *Gould* and other precedent by

undermining the negotiated resolution of the unfair practice charges lodged by the

union.  *See id*.; *Gould*, 260 N.L.R.B. at 57–58.  In the face of decades of Board and

circuit-level law, the Company's argument that "the terms of the Settlement

Agreement" only included express terms spelled out in the Settlement Agreement

is simply unavailing.  The Board was therefore correct to hold that the Side Letter

constituted non-compliance with the terms of the Settlement Agreement.

B

---

[2]    The dissent focused instead on the propriety of immediately entering the default judgment, which deprived the Company of the ability to further contest the entry of judgment on the original Section 8(a) charges.

7

Our conclusion on the second issue follows easily from the first: because the Side Letter constituted non-compliance with the terms of the Settlement Agreement, the contract's default provisions were triggered and appropriately employed to enter default against the Company for the underlying Section 8(a) violations that the Settlement Agreement was meant to resolve. Under its plain provisions, the only issue the Company could contest in these proceedings was whether it failed to comply with the terms of the Settlement Agreement.[3] It contested that issue and lost. Once that was determined, the Settlement Agreement provided for entry of default judgment on the underlying Section 8(a) violations.

The Company's First Amendment Free Speech rights are not implicated because the Board did not find that the Side Letter itself was a violation of Section 8(a) such that section 8(c) was implicated. *See* 29 U.S.C. § 158(c) (providing that an employer's expression of "views, argument, or opinion . . . shall not constitute or be evidence of an unfair labor practice" under Section 8(a)). And, as the Board argued in its brief, the Company voluntarily limited its right to post a Side Letter that undermined the Notice by negotiating and then entering into the Settlement Agreement. Neither Section 8(c) nor the First Amendment insulate the Company

---

[3] Any argument from the Company that it was entitled to a hearing on the non-compliance issue was waived. The Company submitted a joint stipulation of material facts outlining agreement on all the relevant facts to this inquiry and asked the ALJ to enter a ruling without a hearing.

from breach of the Settlement Agreement by undermining its purpose.

The Company is a sophisticated employer.  It is bound by the contract that it signed with the NLRB and must face the consequences, regardless of whether the result may seem harsh or whether the NLRB no longer regularly includes these default provisions in its settlement agreements.  Default judgment was proper here.

## IV

The Company's petition for review is DENIED and the Board's Application for Enforcement of its Order is GRANTED.