# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 6, 2011　　　　　　　Decided June 14, 2011

No. 10-1278

NEW YORK AND PRESBYTERIAN HOSPITAL,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

Consolidated with 10-1291

On Petition for Review and Cross-Application
for Enforcement of an Order of the National
Labor Relations Board

*James S. Frank* argued the cause for the petitioner. *Michael F. McGahan* and *Terence H. McGuire* were on brief.

*Heather S. Beard*, Attorney, National Labor Relations Board, argued the cause for the respondent. *John H. Ferguson*, Associate General Counsel, *Linda Dreeben*, Deputy Associate General Counsel and *Meredith L. Jason*, Deputy Assistant General Counsel, were on brief. *Fred B. Jacob*, Supervisory Attorney, entered an appearance.

Before: HENDERSON, BROWN and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: New York and Presbyterian Hospital (Hospital) petitions for review of a decision and order by the National Labor Relations Board (NLRB or Board) finding the Hospital in violation of section 8(a)(5) of the National Labor Relations Act (Act), 29 U.S.C. § 158(a)(5), for failing to produce information requested by the labor union with which the Hospital has a collective bargaining agreement, the New York State Nurses Association (NYSNA or Union). The Board cross-applies for enforcement of its decision and order. The Hospital asserts that NYSNA failed to demonstrate the relevance of its request for information, attacks the evidentiary foundation of the Board's decision and order and raises a number of additional arguments. We reject the Hospital's arguments and deny its petition for review.

**I.**

The petition for review arises from an alleged violation of the collective bargaining agreement between the Hospital and NYSNA. The Hospital is a not-for-profit corporation operating a large hospital and ten satellite clinics in the Washington Heights area of New York City, New York. The Hospital is affiliated with Columbia University School of Medicine (Columbia) and nearly all of its physicians are members of Columbia's faculty and employed directly by Columbia. NYSNA is a labor union representing the roughly 2600 nurses in the Hospital's employ, including a number of nurse practitioners (NPs)—licensed nurses who possess more advanced credentials. The collective bargaining agreement between the Hospital and NYSNA contains a union security clause, which requires nurses to join the Union within thirty days of being hired by the Hospital, and includes a "side letter," which provides that "[e]xcept for certification, training or

experimentation and emergencies, registered nurses who are outside of the bargaining unit will not routinely or consistently perform those clinical duties normally performed by members of this bargaining unit." *N.Y. Presbyterian Hosp.*, 354 N.L.R.B. No. 5, at \*5 (2009) (reprinting ALJ decision).

In 2004, NYSNA began to suspect that non-Union nurse practitioners were on Hospital premises performing work normally done by members of the NYSNA bargaining unit. NYSNA's focus soon narrowed on a number of NP employees of Columbia who worked at the Hospital. These NPs were not represented by NYSNA. On June 4, 2004, NYSNA filed a grievance alleging that the Hospital "hired nurse practitioners in a nonunion capacity to do bargaining unit work." *N.Y. Presbyterian Hosp.*, 354 N.L.R.B. No. 5, at \*5.

From NYSNA's initial grievance to this petition for review, the dispute has traveled a long and winding road. The Hospital denied the grievance on May 18, 2005, explaining that the Columbia NPs were "not Hospital employees" and thus did "not fall within the Hospital's span of control nor [were] they governed by the Hospital's Policies and Procedures." Letter from Stacie M. Williams, Manager, Human Resources, N.Y. & Presbyterian Hosp., to Roberta Murphy, Nursing Representative, N.Y. State Nurses Ass'n (May 18, 2005) (Joint Appendix (JA) 1343). NYSNA then sought to arbitrate the grievance. A little more than one year later, on August 31, 2006, NYSNA filed an unfair labor practice charge with the NLRB against both the Hospital and Columbia, alleging that they were "a single employer or alter egos of one another" responsible for, *inter alia*, "restrain[ing] and coerc[ing] nurse practitioners at [the Hospital] in exercising their Section 7 rights by employing nurse practitioners to work at [the Hospital] under terms and conditions of employment different from those specified in the collective bargaining agreement with NYSNA covering nurse

practitioners who work at the hospital." Charge Against Employer, *N.Y. Presbyterian Hosp.*, No. 2-CA-37868 (NLRB Aug. 31, 2006). Acting pursuant to Board policy, the Board's Regional Director deferred consideration of NYSNA's unfair labor practice charge to the ongoing arbitration over NYSNA's grievance. *See Collyer Insulated Wire*, 192 N.L.R.B. 837 (1971); *United Techs. Corp.*, 268 N.L.R.B. 557 (1984). Shortly thereafter, Columbia informed NYSNA and the Hospital that, as a non-signatory to the collective bargaining agreement, it did not intend to participate in the arbitration.

NYSNA made a number of requests for information in anticipation of the arbitration hearing. NYSNA twice issued subpoenas *duces tecum* directing a representative of the Hospital to appear at the arbitration hearing and produce documents relating to non-Union NPs working on Hospital premises. NYSNA then sent a letter to the Hospital asking for, *inter alia*, documents between the Hospital and Columbia "concerning the employment of nurse practitioners," information about NPs "designated as NYSNA represented employees" and information about NPs "who are *not* designated as NYSNA represented employees working on the premises of New York Presbyterian Hospital." Letter from Roberta Murphy, Nursing Representative, N.Y. State Nurses Ass'n, to Stacie Williams, Director of Labor Relations, N.Y. [&] Presbyterian Hosp. (Oct. 11, 2007) (10/11/07 Letter) (JA 1599). NYSNA's October 11, 2007 letter forms the basis of the underlying charge at issue.

The arbitration hearing opened on October 25, 2007. No transcript was made but the arbitrator apparently failed to decide whether the Hospital was obligated to produce the requested information. *N.Y. Presbyterian Hosp.*, 354 N.L.R.B. No. 5, at *8. On October 31, 2007 NYSNA filed a second unfair labor practice charge regarding information production, alleging that the Hospital had "refused to bargain" by "failing to respond to

an information request dated October 11, 2007." Charge Against Employer, *N.Y. Presbyterian Hosp.*, No. 2-CA-38512 (NLRB Oct. 31, 2007) (JA 359). On May 30, 2008, the General Counsel of the NLRB (General Counsel) served the Hospital with a complaint alleging that its failure to provide NYSNA with the information requested in the Union's October 11, 2007 letter constituted a violation of section 8(a)(1) and (5) of the Act, 29 U.S.C. § 158(a)(1), (5).

An administrative law judge (ALJ) presided over a four-day hearing. On December 8, 2008 the ALJ ruled in favor of the General Counsel, finding the Hospital violated section 8(a)(1) and (5). *N.Y. Presbyterian Hosp.*, 354 N.L.R.B. No. 5, at *3, *15. The ALJ acknowledged that the Hospital had turned over "most" of the information regarding NPs employed by the Hospital, "except for identifying what shifts they worked." *Id.* at *9. But the ALJ rejected the Hospital's claim that it lacked information regarding the Columbia NPs. The information, the ALJ stated, could be found in the paperwork required to "credential[]" NPs—referring to the review process by which the Hospital assigns privileges to work in specific medical care departments of the Hospital. *Id.* at 10. The credentialing paperwork included, *inter alia*, "the nurse practitioners' names, (including those on Columbia University's payroll); the departments or units where the nurse practitioners are assigned to work; their job duties and their start dates at the hospital." *Id.* The ALJ recommended that the Hospital be required to turn over information regarding the shifts worked by Hospital NPs and the names, dates of hire and/or termination, job duties, departments or areas of work, shifts and full- or part-time status of the Columbia NPs working on Hospital premises. *Id.* at *15.

On April 29, 2009 a two-member panel of the Board affirmed the ALJ's conclusion that the Hospital violated section 8(a)(5) of the Act, 29 U.S.C. § 158(a)(5), and adopted the ALJ's

recommended order with the added requirement that the Hospital produce "[a]ll documents between [the Hospital] and Columbia University Medical Center and/or Trustees of Columbia University concerning the employment of nurse practitioners." *N.Y. Presbyterian Hosp.*, 354 N.L.R.B. No. 5, at *1–2.

Two days later, on May 1, 2009, we issued our decision in *Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB*, holding that a panel of only two Board members could not validly exercise the Board's delegated authority. 564 F.3d 469, 472–73 (D.C. Cir. 2009), *cert. denied*, 130 S. Ct. 3498 (2010). On May 7, 2009 the Hospital filed a motion for reconsideration before the Board, relying on *Laurel Baye Healthcare* to challenge the authority of the two-member panel. N.Y. & Presbyterian Hosp.'s Mot. for Reconsideration, *N.Y. & Presbyterian Hosp.*, No. 2-CA-38512 (NLRB May 7, 2009). The Board denied the motion on June 2, 2009. Order, *N.Y. Presbyterian Hosp.*, No. 2-CA-38512 (NLRB June 2, 2009). During the month of July 2009, the Hospital filed a petition for review of the Board's decision and order in this court, the Board cross-applied for enforcement and we sua sponte held the case in abeyance. *See* Order, *N.Y. & Presbyterian Hosp. v. NLRB*, No. 09-1200 (D.C. Cir. July 16, 2009). After the United States Supreme Court held that three Board members are required to constitute a Board quorum in *New Process Steel, L.P. v. NLRB*, 130 S. Ct. 2635, 2639–42 (2010), the Board vacated its April 29, 2009 decision and order—decided by only two members—and we dismissed the pending petitions for review and enforcement. *See* Mot. of NLRB for Dismissal of Case & Denial of All Outstanding Mots., *N.Y. & Presbyterian Hosp. v. NLRB*, Nos. 09-1200 & 09-1210 (D.C. Cir. Aug. 18, 2010); Order, *N.Y. & Presbyterian Hosp. v. NLRB*, Nos. 09-1200 & 09-1210 (D.C. Cir. Sept. 29, 2010).

The Board tried again on August 26, 2010. Acting with a full three-member quorum, the Board issued a new decision and order "affirm[ing] the [ALJ's] rulings, findings, and conclusions." *N.Y. Presbyterian Hosp.*, 355 N.L.R.B. No. 126, at *1 (2010). The Board adopted and "incorporated . . . by reference" its vacated decision and order from April 29, 2009 "to the extent and for the reasons stated in the [earlier] decision." *Id.*

The dispute took one final twist before it arrived here. Under section 10(e) of the Act, the Board can petition for enforcement of a Board order only in the judicial circuit or district "wherein the unfair labor practice in question occurred or wherein [the person committing the unfair labor practice] resides or transacts business." 29 U.S.C. § 160(e). Accordingly, on August 27, 2010—one day after the three-member Board issued its decision and order—the Board filed an application for enforcement in the Second Circuit "because the unfair labor practice occurred in New York, NY." Application for Enforcement, *NLRB v. N.Y. Presbyterian Hosp.*, No. 10-3471 (2d Cir. Aug. 27, 2010). Under section 10(f) of the Act, by contrast, an aggrieved person seeking to challenge a Board order has the additional option of filing a petition for review "in the United States Court of Appeals for the District of Columbia." 29 U.S.C. § 160(f). Accordingly, the Hospital filed a petition for review in this court on September 7, 2010. Petition for Review, *N.Y. & Presbyterian Hosp. v. NLRB*, No. 10-1278 (D.C. Cir. Sept. 7, 2010). The Board then moved in the Second Circuit—with the Hospital's consent—for voluntary dismissal of its application for enforcement pursuant to Rule 42(b) of the Federal Rules of Appellate Procedure in order to "expedite resolution of this matter" by "proceed[ing] in the District of Columbia Circuit." Unopposed Mot. of NLRB to Dismiss, ¶ 3–4, *NLRB v. N.Y. Presbyterian Hosp.*, No. 10-3471(2d Cir.

Sept. 10, 2010). The Second Circuit granted the Board's motion "with prejudice."[1] Order, *NLRB v. N.Y. Presbyterian Hosp.*, No. 10-3471 (2d Cir. Sept. 14, 2010). The Board then filed a cross-application for enforcement in this court, which we consolidated with the Hospital's petition for review.[2] Cross-Application for Enforcement, *N.Y. & Presbyterian Hosp. v. NLRB*, No. 10-1291 (D.C. Cir. Sept. 17, 2010); Order, *N.Y. & Presbyterian Hosp. v. NLRB*, No. 10-1278 (D.C. Cir. Sept. 23, 2010).

## II.

At issue is whether the Board correctly concluded that the Hospital violated section 8(a)(5) of the Act, 29 U.S.C. § 158(a)(5), by refusing to produce the information the Union requested. "We review the Board's factual conclusions for substantial evidence, defer to NLRB rules if they are rational and consistent with the Act, and uphold the Board's application of law to facts unless arbitrary or otherwise erroneous." *Guard Publ'g Co. v. NLRB*, 571 F.3d 53, 58 (D.C. Cir. 2009) (quoting *Harter Tomato Prods. Co. v. NLRB*, 133 F.3d 934, 937 (D.C. Cir. 1998)) (internal quotation marks omitted); *see also* 29

---

[1] The Hospital had also moved in the Second Circuit to dismiss the Board's application for enforcement on various substantive grounds or, in the alternative, to transfer to the District of Columbia Circuit. *See* Mot. to Dismiss, *NLRB v. N.Y. & Presbyterian Hosp.*, No. 10-3471 (2d Cir. Sept. 8, 2010). The Second Circuit denied the Hospital's motion to dismiss as moot at the same time that it granted the Board's motion for voluntary dismissal. Order, *NLRB v. N.Y. Presbyterian Hosp.*, No. 10-3471 (2d Cir. Sept. 14, 2010).

[2] Once a petition for review is filed pursuant to section 10(f), the reviewing court acquires "the same jurisdiction" to enforce a Board order "as in the case of an application by the Board under subsection (e) of this section." 29 U.S.C. § 160(f).

U.S.C. § 160(e) ("The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive.").

## A. Relevance of Documents

Section 8(a)(5) imposes upon an employer the "duty to bargain collectively," *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 303 (1979), and the employer's duty "has long been acknowledged to include a duty to supply a union with 'requested information that will enable [the union] to negotiate effectively and to perform properly its other duties as bargaining representative.' " *Oil, Chem. & Atomic Workers Local Union No. 6-418 v. NLRB*, 711 F.2d 348, 358 (D.C. Cir. 1983) (alteration in original) (quoting *Local 13, Detroit Newspaper Printing & Graphic Commc'ns Union v. NLRB*, 598 F.2d 267, 271 (D.C. Cir. 1979)). Because a union's other duties include the duty "to see to it that an employer meets its [collective bargaining agreement] obligations," *Int'l Union of Elec., Radio & Mach. Workers v. NLRB*, 648 F.2d 18, 25 (D.C. Cir. 1980), the employer's duty to furnish information "extends to data requested in order properly to administer and police a collective bargaining agreement." *Oil, Chem. & Atomic Workers*, 711 F.2d at 358.

Nevertheless, the duty imposed by section 8(a)(5) is subject to a minimum standard of relevance: "The union's need and the employer's duty depend, in all cases, on the 'probability that the desired information [is] relevant, and that it [will] be of use to the union in carrying out its statutory duties and responsibilities.' " *Id.* at 359 (alterations in original) (quoting *NLRB v. Acme Indus. Co.*, 385 U.S. 432, 437 (1967)). The requisite showing of relevance depends, in turn, on whether the union is requesting information about employees who are part of the bargaining unit or outside it. "For information about

employees in the bargaining unit, it is presumed that the requested information is relevant . . . , and the employer must provide the information unless it can show the information is irrelevant." *U.S. Testing Co. v. NLRB*, 160 F.3d 14, 19 (D.C. Cir. 1998). Here, the first portion of the Board's order—requiring the Hospital to furnish information regarding "[t]he shifts worked of all nurse practitioners who are directly employed by the [Hospital],"*N.Y. Presbyterian Hosp.*, 354 N.L.R.B. No. 5, at *1—involved only bargaining unit employees represented by NYSNA and therefore relevance is presumed. With respect to employees outside the bargaining unit, on the other hand, "the burden is on the union to demonstrate the relevance of [the requested] information." *U.S. Testing Co.*, 160 F.3d at 19. We must therefore inquire further into the relevance of the remaining portions of the Board's order—which, in requiring the Hospital to furnish information about "nurse practitioners who are on the payroll of Columbia University" and documents between the Hospital and Columbia "concerning the employment of nurse practitioners," *N.Y. Presbyterian Hosp.*, 354 N.L.R.B. No. 5, at *1–2, related to employees outside the bargaining unit represented by NYSNA.

"A union's bare assertion that it needs information . . . does not automatically oblige the employer to supply all the information in the manner requested." *Detroit Edison*, 440 U.S. at 314. In requesting information about employees outside the bargaining unit, the union must explain to the employer why the information is relevant. *See ConAgra, Inc. v. NLRB*, 117 F.3d 1435, 1439 (D.C. Cir. 1997) (where no presumption of relevance applies, "union must demonstrate that any requested . . . information is relevant . . . in order to require the employer to turn it over"). Nevertheless, " 'the threshold for relevance is low.' " *Brewers & Maltsters, Local Union No. 6 v. NLRB*, 414 F.3d 36, 45 (D.C. Cir. 2005) (quoting *DaimlerChrysler Corp. v.*

*NLRB*, 288 F.3d 434, 443 (D.C. Cir. 2002)). In particular, the union need not demonstrate "the existence of some particular controversy or the need to dispose of some recognized problem." *Oil, Chem. & Atomic Workers*, 711 F.2d at 361. Rather, we apply a "discovery-type standard," *Acme*, 385 U.S. at 437, under which " '[t]he fact that the information is of probable or potential relevance is sufficient to give rise to an obligation . . . to provide it.' " *Oil, Chem. & Atomic Workers*, 711 F.2d at 359 (ellipsis in original) (quoting *Westinghouse Elec. Corp.*, 239 N.L.R.B. 106, 107 (1978)).

There can be little dispute that NYSNA's information request is relevant to the question whether non-bargaining unit NPs are performing bargaining unit work. If true, that practice might well make out a violation of the "side letter" to the Hospital's collective bargaining agreement with NYSNA. Because NYSNA's representative duties include policing the Hospital's adherence to the collective bargaining agreement, *see Oil, Chem. & Atomic Workers*, 711 F.2d at 358, the Union was within its rights to demand the information and the Hospital was obligated to provide it.

The Hospital contends that the requested information regarding Columbia NPs is irrelevant to the Union's original grievance, which alleged only that the Hospital had "hired" non-Union NPs to perform bargaining unit work. If the precise wording of the grievance bounded the scope of the Hospital's duty to provide information, we might agree that the Hospital had no obligation to furnish information regarding NPs not "hired" by the Hospital. We have held, however, that "context is everything" in evaluating the relevance of a union's request for information, *U.S. Testing Co.*, 160 F.3d at 19, and we consider the reasons proffered by the union at the time of its request, *see Gen. Elec. Co. v. NLRB*, 916 F.2d 1163, 1169 (7th Cir. 1990) (relevance "must be examined as of the time of the

demand and refusal"). The current dispute arises not from NYSNA's original grievance but from the request for information contained in the Union's October 11, 2007 letter. Indeed, as the ALJ observed, the October 11, 2007 letter was carefully phrased to cover documents about non-Union NPs working on Hospital premises "*irrespective of who was their employer.*" *N.Y. Presbyterian Hosp.*, 354 N.L.R.B. No. 5, at *7 (emphasis in original). The nub of NYSNA's request for information was the Union's concern that non-Union NPs were performing bargaining unit work in the Hospital. We believe that NYSNA has adequately demonstrated the relevance of its request for information.

The Hospital also challenges the Board's order and decision on various factual grounds. The Hospital claims, for instance, that it had already furnished the information requested by NYSNA about the shifts worked by bargaining unit NPs employed by the Hospital. The record, however, belies the Hospital's assertion. When Roberta Murphy, NYSNA's representative, was asked during direct examination whether the Union had "receive[d] any information to show the shift [*sic*] worked for NYSNA represented employees," she answered, "No." Hearing Tr. at 179, *N.Y. Presbyterian Hosp.*, No. 2-CA-38512 (NLRB Sept. 4, 2008) (Tr. 9/4). Although Murphy admitted during cross examination that the Hospital produced information about the "amount of shift differential that was paid" to NPs at the Hospital, she maintained that the documents showed only shift differential and "[n]ot the shifts worked." Tr. 9/9 at 343–44. The Hospital cites no specific evidence to rebut Murphy's testimony but refers instead to portions of the record detailing the information the Hospital *did* produce. There is no dispute that the Hospital produced "most of the information" requested by the Union about bargaining unit NPs. *N.Y. Presbyterian Hosp.*, 354 N.L.R.B. No. 5, at *9. The question

before us, however, is whether the Board's order that the Hospital be required to furnish information about shifts worked by bargaining unit NPs is supported by substantial evidence. In the absence of countervailing evidence, we conclude that it is.

The Hospital argues further that the credentialing files in its custody are non-responsive to NYSNA's request for information about non-Union Columbia NPs. We disagree. The Director of Operations of Columbia's Department of Medicine testified that a typical credentialing packet specifies the NP's name, anticipated start date at the Hospital, the unit of the Hospital in which the NP is expected to perform duties, a "statement of duties" and a collaborative practice agreement with a supervising physician outlining the NP's "job duties as it relates to the position." Tr. 9/4 at 199, 201–02, 243. Although it is likely, as the Hospital argues, that the credentialing files do not contain *all* of the information requested by NYSNA—such as the Columbia NPs' shifts or full- or part-time status—this deficiency does not relieve the Hospital of its obligation to produce whatever responsive information it does possess. The Hospital's reliance on cases in which the employer did not possess the information being sought in any form, *see, e.g.*, *Detroit Typographical Union No. 18 v. NLRB*, 216 F.3d 109, 121 (D.C. Cir. 2000), or in which the employer had already furnished all of the information in its possession, *see, e.g.*, *Korn Indus., Inc. v. NLRB*, 389 F.2d 117, 123 (4th Cir. 1967), is therefore misplaced.

## B. Other Matters

The Hospital also argues that NYSNA sought the information in order to force the Hospital to stop doing business with Columbia in violation of section 8(e) of the Act, 29 U.S.C. § 158(e). Because the Hospital invoked section 8(e) as an affirmative defense, it bore the burden of proving the elements

of a section 8(e) violation: there must be an " 'agreement, express or implied, . . . to cease doing business with any other person' " and the agreement must be " 'secondary' . . . . [t]hat is, . . . the agreement must be designed not solely to 'improv[e] the [primary employer's] employees' wages, hours, and working conditions,' but also 'to satisfy union objectives elsewhere.' " *Sheet Metal Workers, Local Union No. 91 v. NLRB*, 905 F.2d 417, 421 (D.C. Cir. 1990) (alterations in original) (quoting 29 U.S.C. § 158(e) and *Nat'l Woodwork Mfrs. Ass'n v. NLRB*, 386 U.S. 612, 643, 644 (1967)).

The Board's rejection of the Hospital's section 8(e) argument meets the requisite threshold. It is well-established that "[s]ection 8(e) does not . . . reach" contractual provisions "encompassing 'employees' activity to pressure their employer to preserve for themselves work traditionally done by them,' " such as NYSNA's side letter with the Hospital reserving bargaining unit work for NYSNA-represented nurses. *Int'l Union of Painters & Allied Trades, Local Unions No. 970 & 1144 v. NLRB*, 309 F.3d 1, 7 (D.C. Cir. 2002) (ellipsis added) (emphasis omitted) (quoting *Nat'l Woodwork Mfgs. Ass'n*, 386 U.S. at 635). The ALJ found that NYSNA "was seeking to enforce its contract and require the Hospital to assign unit work to bargaining unit members who are employed by the Hospital." *N.Y. Presbyterian Hosp.*, 354 N.L.R.B. No. 5, at *13. The Hospital offers no evidence to suggest NYSNA was acting with any purpose other than to enforce the side letter.

We also reject the Hospital's claim that the Board should have deferred the dispute to arbitration. "[T]he Board has long adhered to a policy of refusing to defer disputes concerning information requests" and its decision whether or not to depart from such policy "is squarely within the purview of the Board, not of this court." *DaimlerChrysler Corp. v. NLRB*, 288 F.3d 434, 444, 447 (D.C. Cir. 2002). The Hospital makes much of the

fact that two Board members expressed willingness to revisit the Board's deferral policy under certain circumstances. Both members, however, agreed that deferral would be "inappropriate in this case" because the arbitrator failed to rule on the Union's request for information, *N.Y. Presbyterian Hosp.*, 354 N.L.R.B. No. 5, at *2 n.3 (Member Schaumber); *N.Y. Presbyterian Hosp.*, 355 N.L.R.B. No. 126, at *1 n.3 (Member Hayes); *see* Tr. 9/9 at 315 (Murphy testimony) (arbitrator "refused to rule" on information request).

Finally, we decline to reach the remaining arguments raised by the Hospital. The Hospital argues that when the Second Circuit granted the Board's motion for voluntary dismissal "with prejudice," it rendered a final judgment that precludes, as a matter of res judicata, the Board's cross-application for enforcement in this court. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 326 (1955) ("[U]nder the doctrine of res judicata, a judgment 'on the merits' in a prior suit involving the same parties . . . bars a second suit based on the same cause of action."). While we are skeptical that a voluntary dismissal—even one "with prejudice"—operates as an adjudication "on the merits" for the purpose of res judicata, *see, e.g.*, *Agrolinz, Inc. v. Micro Flo Co.*, 202 F.3d 858, 861 (6th Cir. 2000) (under Florida and Tennessee law, "order of dismissal 'with prejudice' should be treated as a dismissal without prejudice . . . when it is apparent that there had been no adjudication of the substantive issues"), we need not decide the issue because even if the Board were precluded from re-filing an application for enforcement under section 10(e), the Hospital's petition for review pursuant to section 10(f) gives us the "same jurisdiction" to enforce the Board's order. 29 U.S.C. § 160(f).

Nor do we reach the Hospital's argument that the Board failed to engage in "reasoned decisionmaking"—as the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*,

requires of Board decisions, *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998)—when the three-member panel of the Board summarily adopted the vacated April 29, 2009 decision and order. Whatever the merits of the Hospital's claim, section 10(e) prevents us from considering the argument raised for the first time on appeal. *See* 29 U.S.C. § 160(e) ("No objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."). The fact that the Board filed an application for enforcement in the Second Circuit just one day after adopting the decision and order does not constitute an "extraordinary circumstance[]," as the Hospital contends, because the Hospital still had up to twenty-eight days to move for reconsideration before the Board, 29 C.F.R. § 102.48(d)(2), and the Board's overlapping jurisdiction remained intact so long as the record had not been filed in the Second Circuit, 29 U.S.C. § 160(d), (e). Nor did the Hospital's motion for reconsideration of the Board's original April 29, 2009 decision and order, *supra* at 6, raise the same objection the Hospital presses now—that the Board took an "impermissible shortcut" by summarily adopting the vacated decision and order. Pet'r's Br. 32. Accordingly, the Hospital has forfeited its APA challenge.

Section 10(e) also forecloses our consideration of the Hospital's argument that the Board's order contained inadequate safeguards for the Hospital's confidential information. The Hospital failed to preserve the issue by not raising it in exceptions to the ALJ decision and recommended order. *See* 29 C.F.R. § 102.46(b)(2) ("Any exception . . . which is not specifically urged shall be deemed to have been waived."). The closest reference was the Hospital's exception to "requiring the Hospital to pull information from credentialing files to disclose to the Union," Exceptions to Decision & Recommended Order

of ALJ, *N.Y. & Presbyterian Hosp.*, No. 2-CA-38512, ¶ 65 (NLRB Jan. 20, 2009), but the language was too broad to put the Board on notice of the Hospital's specific interest in the confidentiality of the information contained in the credentialing files, *cf. Quazite Div. of Morrison Molded Fiberglass Co. v. NLRB*, 87 F.3d 493, 497 (D.C. Cir. 1996) (exception to remedial order "in its entirety" was "far too broad to preserve a particular issue for appeal").

For the foregoing reasons, we deny the Hospital's petition for review and grant the Board's cross-application for enforcement.

*So ordered.*