NATIONAL LABOR RELATIONS BOARD, Petitioner, Cross-Respondent,

v.

The EPISCOPAL COMMUNITY OF ST. PETERSBURG, d/b/a Suncoast Manor, Respondent, Cross-Petitioner.

No. 82–5357.

United States Court of Appeals, Eleventh Circuit.

March 16, 1984.

Elliott Moore, Deputy Associate General Counsel, John Burgoyne, N.L.R.B., Washington, D.C., for petitioner, cross-respondent.

Greene, Mann, Rowe, Stanton, Mastry & Burton, Marian P. McCulloch, John M. Breckenridge, Jr., Tampa, Fla., for respondent, cross-petitioner.

Before VANCE and CLARK, Circuit Judges, and SWYGERT *, Senior Circuit Judge.

CLARK, Circuit Judge:

Petitioner, National Labor Relations Board (NLRB or Board), seeks enforcement

---

* Honorable Luther M. Swygert, U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

of a Board order issued on September 30, 1981 and reaffirmed on August 20, 1982.[1] Through this Order, the Board ordered the respondent, The Episcopal Community of St. Petersburg, d/b/a Suncoast Manor (Suncoast), to cease and desist from refusing to bargain collectively with United Food and Commercial Workers Local 1776, Professional and Health Care Division, United Food and Commercial Workers International Union, AFL–CIO–CLC (Union), as the exclusive bargaining representative of a unit of Suncoast's employees. Suncoast urges this court not to enforce the Order, contending that the exclusion of nonprofessional dietary employees from the bargaining unit, which consisted of all other nonprofessional employees, was inappropriate. The NLRB, however, contends that it acted reasonably in finding that this unit was appropriate and, therefore, Suncoast was required to bargain with the Union. The sole issue before this court is whether the Board acted reasonably in finding that a unit of Suncoast's nonprofessional employees, excluding nonprofessional dietary employees, was an appropriate bargaining unit. We have jurisdiction. 29 U.S.C. § 160(e).

### Background

Suncoast operates a retirement community in St. Petersburg, Florida. This community occupies 30 acres and consists of 250 apartment living units and a 161 bed nursing home. While the apartments house approximately 300 people, the nursing home has never operated at full capacity and, normally, approximately 110 people occupy its beds. New residents must be free of communicable diseases, ambulatory and able to care for themselves; Suncoast will not admit a new resident directly to the nursing home. Residents enter the nursing home only if, after admitted to the community, they subsequently become ill. Although nursing home services are an integral part of the services Suncoast provides, Suncoast does not consider itself as "predo-

---

1. These decisions and orders are reported at 258 NLRB 1279 and 263 NLRB 584, respectively. Hereinafter, "Order" refers to both the original and supplementary orders.

minately a nursing home." Indeed, Suncoast does not presently have the capacity to provide nursing home care to its entire membership, nor has Suncoast ever intended to or discussed the possibility of becoming solely a nursing home.

Suncoast retains a staff of employees to provide its members with shelter, food, housekeeping and, if needed, nursing home services. Of these employees, 134 are "nonprofessional," consisting of building and grounds maintenance employees, housekeepers, nurse's aides and dietary employees. Suncoast employs all of its nonprofessional employees directly, except for the dietary group. The dietary employees, the largest single group of employees, consists of 61 individuals and serves Suncoast pursuant to a contractual agreement between Suncoast and ARA Services, Inc. (ARA). ARA is a meal services company which provides both food and dietary employees to Suncoast. Although Suncoast exercises some control over these dietary employees, respondent admits that the degree of control would have, at most, made Suncoast a "joint employer" with ARA. Thus, Suncoast was, at best, a joint employer of the dietary employees and the sole employer of all other nonprofessional employees.[2]

On March 2, 1981, the Union filed a representation petition with the Board's Regional Office seeking certification as the collective bargaining representative for a unit comprised of Suncoast's nonprofessional employees, excluding dietary employees. On March 23, 1981, the Board held a hearing on the Union's petition. At this hearing, Suncoast challenged the unit sought by the Union as inappropriate because it excluded dietary employees.[3] Suncoast contended that it exercised sufficient control over the dietary employees to qualify itself as a "joint employer" with ARA, and, therefore, the bargaining unit should include dietary employees. Finding Suncoast's evidence of control insufficient to sustain its "joint employer" argument, the Board's Regional Director on April 9, 1981, issued his Decision and Direction of Election, in which he ordered an election in the unit sought by the Union.[4]

Suncoast pursued its "joint employer" argument by filing with the Board a timely Request for Review. On May 7, 1981, the Board denied Suncoast's request, stating that "even assuming the employers [Suncoast and ARA] are joint employers, we do not find it necessary to include the [dietary] employees of the joint employers in the petitioned for unit as they have a different employer [than Suncoast's other nonprofessional employees] and would constitute a separate appropriate unit." (R. at 392). The following day, the Board conducted an election among the nonprofessional employees, excluding dietary employees, which the Union won by a 47–35 vote. Suncoast filed no objections, and, on May 19, 1981, the Regional Director issued a certification that the Union was the exclusive collective bargaining representative of Suncoast's nonprofessional employees.

Despite the Union's certification, Suncoast refused to bargain with the Union. Consequently, on June 29, 1981, the Union filed a charge and, on July 21, 1981, the General Counsel issued a complaint, alleging that Suncoast's refusal to bargain violated § 8(a)(5) and (1) of the National Labor Relations Act (NLRA or Act), 29 U.S.C. § 158(a)(5) and (1). On July 30, 1981, Suncoast timely answered the complaint raising as its affirmative defenses

---

**2.** In fashioning the Order sought to be enforced in this case, the NLRB found it unnecessary to determine whether ARA alone, or ARA and Suncoast, jointly, employed the dietary employees. Accordingly, our discussion of the facts surrounding the issue of Suncoast's "control" over dietary employees is abbreviated.

**3.** Suncoast stipulated to the exclusion of professional employees, such as registered nurses and licensed practical nurses.

**4.** The unit found appropriate was described as follows (R. 387):

All full-time and regular part-time nurse's aides, housekeeping employees, building maintenance employees and grounds maintenance employees employed by the Employer at its St. Petersburg, Florida facility; *Excluding* all registered nurses, licensed practical nurses, dietary department employees employed by ARA Hospital Food Management, Inc., guards and supervisors as defined in the Act.

that the bargaining unit certified was inappropriate and that the exclusion of dietary employees was an undue proliferation of health care bargaining units, contrary to congressional intent and the Board's own established position. On the General Counsel's motion, the case was transferred to the NLRB on August 27, 1981. The General Counsel moved for summary judgment, contending that, because the issue of the appropriate bargaining unit had already been resolved in the underlying representation case, Suncoast's answer raised no litigable issues. The Board ordered Suncoast to show cause, and Suncoast responded that the Board's bargaining unit determination in the representation case was contrary to Board and court decisions and, therefore, that a hearing should be held.

On September 30, 1981, the Board granted the General Counsel's motion for summary judgment, finding that Suncoast was merely seeking to relitigate the bargaining unit issue, which had already been resolved in the representation case. Accordingly, the Board found that Suncoast's refusal to bargain with the Union constituted an unfair labor practice and, therefore, violated the NLRA. The Board then ordered Suncoast to cease and desist from engaging in this unfair labor practice and directed Suncoast to bargain collectively with the Union and to post appropriate notices.

On March 19, 1982, the Board petitioned this court for enforcement. At the NLRB's request, we granted extensions so that the Board could modify its decision. On August 20, 1982, the Board filed its Supplemental Decision and Order. The Board reaffirmed its previous decision that the unit was appropriate even if Suncoast and ARA were joint employers of the dietary employees, but it changed its approach to Suncoast's contention that the unit found appropriate unduly proliferated health care bargaining units. In its original ruling on the summary judgment motion, the Board

refused to entertain the health care industry argument because that issue had already been litigated in the representation hearing. In its supplemental order, however, the Board determined that Suncoast merely made a "passing reference to the health care issue in the underlying representation case...." (Supplemental Decision at 3). Thus, the Board found that the health care issue was not argued to the Board in the representation case and, therefore, it could not be raised in the unfair labor practice proceeding. The underlying order requiring Suncoast to bargain collectively with the unit found appropriate, therefore, remained intact. Suncoast urges this court not to enforce the Order, contending once again that the bargaining unit is inappropriate because (1) Suncoast is a joint employer of the dietary employees and (2) Suncoast's retirement community is a "health care institution" which Congress, the Board, and the courts have protected from undue proliferation of bargaining units.

### Opinion

"[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *SEC v. Chenery Corp.,* 318 U.S. 80, 95, 63 S.Ct. 454, 462, 87 L.Ed. 626, 637 (1943). The effect of this rule is "that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." K. Davis, *Administrative Law Treatise,* § 14.-29 (2d ed. 1980).[5] If we are to enforce the Board's Order, therefore, we must do so on the grounds that, first, under traditional unit criteria, the bargaining unit was appropriate even if Suncoast and ARA were joint employers, and second, the Board did not have to employ the more stringent criteria

---

**5.** The U.S. Supreme Court has reaffirmed the *Chenery* rule in at least two unfair labor practice orders issued by the Board. *See First Nat'l Maintenance Corp. v. NLRB,* 452 U.S. 666, 672 n. 6, 101 S.Ct. 2573, 2577 n. 6, 69 L.Ed.2d 318, 326 n. 6 (1981); *NLRB v. Enterprise Ass'n,* 429

U.S. 507, 523 n. 9, 97 S.Ct. 891, 900 n. 9, 51 L.Ed.2d 1, 15 n. 9 (1977). *See also NLRB v. Frederick Memorial Hosp.,* 691 F.2d 191, 194 (4th Cir.1982); *NLRB v. West Suburban Hosp.,* 570 F.2d 213, 216 (7th Cir.1978).

applicable to health care institutions because Suncoast failed to raise this argument in the underlying representation hearing.

### 1. Joint Employers

■ Suncoast is the sole employer of all maintenance employees at its facility, except for dietary employees who work at Suncoast pursuant to a contract with ARA and as employees of ARA. Suncoast contends, however, that it is a "joint employer" of the dietary employees and, for that reason, they must be included in the bargaining unit. The Board concluded that even if Suncoast jointly employs the dietary employees, a unit which excluded those employees is still appropriate. In reviewing this conclusion, we observe that the Board's decision is vested with a large measure of discretion, and it will not be disturbed unless Suncoast meets its burden of demonstrating that the Board's determination was lacking substantial evidentiary support, arbitrary, capricious, or an abuse of discretion. *Daylight Grocery Co. v. NLRB,* 678 F.2d 905, 908 (11th Cir.1982); *NLRB v. Southern Metal Serv.,* 606 F.2d 512, 514 (5th Cir.1979).

■ We find that Suncoast has not met its burden of demonstrating that the Board's conclusion was error. While the unit urged by Suncoast probably might not be inappropriate, it does not necessarily follow that a unit which included dietary employees would be the appropriate unit under the facts here. Where more than one unit would be appropriate, the Board need not pick the most appropriate unit, provided that the unit selected is also appropriate. *Daylight, supra,* 678 F.2d at 908.

■ Under traditional unit criteria, "[t]he critical consideration in determining the appropriateness of a proposed unit is whether the employees comprising the unit share a "community of interest." *Friendly Ice Cream Corp. v. NLRB,* 705 F.2d 570, 575 (1st Cir.1983). Although some circumstances indicate that the dietary employees share a common community of interest with the employees in the proposed unit,[6] other factors support the exclusion of dietary employees from the bargaining unit. Dietary employees are hired and fired by ARA, and the personnel records for dietary employees are kept separate from other employees' records. Dietary employees wear a distinctive uniform and, unlike Suncoast's employees, receive free meals. Moreover, there is little interchange between dietary and other employees; since ARA has supplied dietary employees, only a single employee has transferred from the dietary services to another position with Suncoast.[7] Suncoast has neither demonstrated that it was a joint employer with ARA nor that the exclusion of dietary employees from the bargaining unit rendered that unit inappropriate.

### 2. Waiver

■ In the legislative history to the 1974 amendments to the NLRA,[8] Congress admonished the NLRB to avoid undue proliferation of bargaining units in "health care institutions."[9] Recognizing this admoni-

---

**6.** For example, Suncoast's personnel policies which cover such matters as holidays, fringe benefits, sick leave and vacations apply equally to the dietary employees.

**7.** Although the Board found it unnecessary to rule on the joint employer issue, the administrative law judge found as a fact that Suncoast and ARA were not a joint employer of the dietary employees employed by ARA at Suncoast's facility. In so finding, the ALJ noted that all of the dietary employees are directly supervised by ARA's supervisory staff, that the contract between the parties provides that ARA will maintain a supervisory staff of home office expert administrative, dietetic, purchasing, and personnel advice, the parties agreed that neither would employ supervisory employees of the other without written permission

during the period of the agreement and six months thereafter, and that the contract between the parties was subject to cancellation on 60 days' notice by either party. He further noted that ARA and Suncoast do not share common officers, directors, or management and are separate and distinct corporate entities.

**8.** Act of July 26, 1974, Pub.L. No. 93–360, 88 Stat. 395, *amending NLRA,* 29 U.S.C. §§ 151–68 (Supp. V 1981).

**9.** The admonition appears in the Committee Reports of both Houses. *See* S.Rep. No. 766, 93d Cong., 2d Sess. 5 (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News 3946, 3950; H.R.Rep. No. 1051, 93d Cong., 2d Sess. 7 (1974), *reprinted in* Legislative History of the Coverage of Nonprofit Hospitals Under the NLRA, 1974, Pub.L. 93–360 (S. 3203), at 269

tion, the Board has made it clear that it will not adhere to traditional unit criteria in determining health care bargaining units. *See, e.g., St. Francis Hosp.*, 265 NLRB No. 120 (1982).[10] Suncoast contends that the Board should have applied the health care unit criteria to determine the appropriateness of the unit in the instant case, rather than the traditional community of interest test. The Board refused to apply the more stringent criteria, finding that Suncoast had failed to raise the health care argument in the underlying representation case and had, therefore, waived its right to present that argument in the unfair labor practice proceeding. Suncoast now urges this court to remand the case to the Board to apply the health care unit criteria, contending that the Board erred in finding a waiver.

The record in this case supports the Board's conclusion that Suncoast did not raise the health care issue in the representation case.[11] Suncoast cites two instances in which it conceivably raised the health care argument before the Regional Director. First, in its motion to dismiss the Union's petition for election, Suncoast asserted that the "unit petitioned for it [sic] an unnecessary fragmentation of the Employer's work force, contrary to the policy and provisions of the [NLRA]." Second, before the unfair labor practice case was transferred to the Board, Suncoast filed its answer to the complaint and notice of hearing, asserting as an affirmative defense

that "the exclusion of dietary employees ... constitutes an undue proliferation of health care bargaining units, ... contrary to Congressional intent, the [NLRA], reported Board case law and policy."

As to the "unnecessary fragmentation" contention, we agree with the Board that, when read in context, this assertion was, at best, a passing reference to the health care argument. As to the affirmative defense to the unfair labor practice complaint, by definition an "answer" to an "unfair labor practice proceeding complaint" could not have been asserted, and was not asserted, at the representation case. Thus, we find that Suncoast failed to raise the health care argument in the underlying representation case, and, therefore, we hold that the health care issue was not cognizable by the Board in the unfair labor practice proceeding. In *NLRB v. Louisiana Industries, Inc.*, 414 F.2d 227 (5th Cir.1969), the court held:

A reading of the case law allows no other conclusion but to affirm the Board's judgment. The employer's failure to appeal the ruling of the Regional Director prior to an election was a waiver of this point, and he may not raise the same issue as a defense to an unfair labor practice charge arising from his refusal to bargain with the successful union....

*Id.* at 228 (citations omitted). Consequently, the health care issue is not properly before this court in the NLRB's petition for enforcement of its Order. *See Pittsburgh*

---

(1974). A "health care institution" is defined as "any hospital, convalescent hospital, health maintenance organization, health clinic, nursing home, extended care facility, or other institution devoted to the care of sick, infirm, or aged persons." 29 U.S.C. § 152(14). Although there is some question in this case as to whether Suncoast is a health care institution for purposes of the Act, we do not address this question in resolving the waiver issue. *See generally North Suburban Blood Ctr. v. NLRB*, 661 F.2d 632 (7th Cir.1981) (blood center is a health care institution); *NLRB v. Long Beach Youth Ctr.*, 591 F.2d 1276 (9th Cir.1979) (drug rehabilitation center is a health care institution); Vernon, *Labor Relations in the Health Care Field Under the 1974 Amendments to the NLRA*, 70 Nw.L.Rev. 202, 207–09 (1975).

**10.** Several U.S. Circuit Court of Appeals have also recognized this admonition. *See, e.g.,*

*Trustees of Masonic Hall and Asylum Fund v. NLRB,* 699 F.2d 626, 627 n. 1 (2d Cir.1983), and cases cited therein.

**11.** The Board notes the following in its Supplementary Order of August 20, 1982 (R. 449):

Indeed, in its request for review, Respondent appears to concede that it is not a health care institution. Thus, in describing the health care facility which services Respondent's retirement community, Respondent states, "While health care is an integral part of the services provided by the Employer, it is not their primary mission nor the apex of this operation.... It would be impossible for Suncoast to provide nursing home care of their entire membership. There was never any discussion or intent that Suncoast become a nursing home.''

*Plate Glass Co. v. NLRB,* 313 U.S. 146, 162, 61 S.Ct. 908, 917, 85 L.Ed. 1251, 1263 (1941); *NLRB v. Wagner Elec. Corp.,* 586 F.2d 1074, 1076 n. 2 (5th Cir.1978); *St. Anthony Hosp. Sys. v. NLRB,* 655 F.2d 1028, 1030 (10th Cir.1981) (failure of church-operated hospital to object to NLRB's jurisdiction on first amendment grounds at representation hearing constituted waiver of the first amendment jurisdictional argument at subsequent unfair labor practice proceeding and petition for review).

### Conclusion

Suncoast has failed to meet its burden and demonstrate that the Board erred in finding that (1) the unit was appropriate even if Suncoast and ARA were joint employers of the dietary employees and (2) Suncoast failed to raise the health care unit argument in the underlying representation case and, therefore, waived the argument. Accordingly, the Board's Order should be enforced.

ENFORCED.