[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13920

_____

Agency No. 12-CA-26377

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 27, 2012
JOHN LEY
CLERK

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

INTERNATIONAL ASSOCIATION OF MACHINISTS
AND AEROSPACE WORKERS,

Intervenor,

versus

CONTEMPORARY CARS, INC.,
d.b.a. Mercedes-Benz of Orlando,

Respondent.

_____

Application for Enforcement of an Order of the
National Labor Relations Board

_____

(January 27, 2012)

Before HULL, MARCUS and BLACK, Circuit Judges.

BLACK, Circuit Judge:

Petitioner National Labor Relations Board (the Board or NLRB) seeks enforcement of its order against Respondent Contemporary Cars, Inc. (Contemporary). *See* 355 NLRB No. 113 (2010). Because we conclude that (1) we lack jurisdiction to consider Contemporary's due process challenge and (2) the Board's bargaining-unit determination is supported by substantial evidence, we grant the Board's petition.

## I. PROCEDURAL BACKGROUND

On October 3, 2008, the International Association of Machinists and Aerospace Workers (the Union) filed a petition with the Board seeking certification as the representative of Mercedes-Benz service technicians employed at Contemporary. The Board's Regional Director held a hearing, determined the proposed bargaining unit was appropriate under two different theories, and directed that an election occur. Contemporary requested that the Board review the Regional Director's decision regarding the bargaining unit. Despite only having two members, the Board summarily denied the request. Members of the bargaining unit voted in favor of representation by the Union, and the Regional Director certified the Union. To preserve its right to challenge the validity of the

bargaining-unit determination in a court of appeals, Contemporary refused to bargain. The Union filed an unfair labor practice charge with the Board. Contemporary conceded the violation, and on August 28, 2009, the two-member Board issued an order finding Contemporary in violation of the National Labor Relations Act (the Act). *See* 354 NLRB No. 72 (2009).

On September 3, 2009, Contemporary filed a petition for review of the NLRB's order with the United States Court of Appeals for the District of Columbia Circuit, seeking review of the bargaining-unit determination. The NLRB filed a cross-petition seeking enforcement. The D.C. Circuit granted Contemporary's motion to hold the case in abeyance pending the Supreme Court's decision in *New Process Steel, L.P. v. NLRB*, __ U.S. __, 130 S. Ct. 2635 (2010). On June 17, 2010, the Supreme Court held the Act requires that the Board render decisions with a minimum of three members. *Id.* at 2645.

On August 17, 2010, the NLRB issued an order setting aside its previous two-member decision to "take further action as appropriate."[1] 355 NLRB No. 113 (2010). On August 23, 2010, the original two members plus an obligatory third member issued a new order, again affirming the Regional Director's bargaining-

---

[1] The NLRB had never filed the record with the D.C. Circuit, thus retaining jurisdiction over the matter despite the filing of a petition for review. *See* 29 U.S.C. § 160(e).

3

unit decision. *Id.* The August 23 order incorporated by reference the two-member

order, and found Contemporary in violation of the Act. On August 25, 2010, the

NLRB filed a petition for enforcement of its order with this Court.[2]

## II. DUE PROCESS CHALLENGE

Contemporary argues that the NLRB's decision-making procedures post-

*New Process Steel* violated due process. Section 10(e) of the Act proscribes

judicial review of any question not raised before the Board, except upon a

showing of extraordinary circumstances. *Woelke & Romero Framing, Inc. v.*

*NLRB*, 456 U.S. 645, 665-66, 102 S. Ct. 2071, 2083 (1982); *NLRB v. Ochoa*

*Fertilizer Corp.*, 368 U.S. 318, 322, 82 S. Ct. 344, 347-48 (1961). This procedural

bar extends to procedural and due process objections. *Goya Foods of Fla.*, 525

F.3d 1117, 1127 n.13 (11th Cir. 2008); *Ala. Roofing & Metal Co. v. NLRB*, 331

F.2d 965, 967 (5th Cir. 1964)[3]; *N.Y. & Presbyterian Hosp. v. NLRB*, 649 F.3d 723,

733 (D.C. Cir. 2011).

---

[2] Although a company may seek review in the D.C. Circuit, *see* 29 U.S.C. § 160(f), the NLRB must file for enforcement in the circuit where the unfair labor practice occurred or where the company resides or transacts business. 29 U.S.C. § 160(e). Thus, venue is proper. *See NLRB v. Goya Foods of Fla.*, 525 F.3d 1117, 1129 n.16 (11th Cir. 2008).

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981, as well as all decisions by a Unit B panel of the former Fifth Circuit, *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

Contemporary contends § 10(e)'s exception for "extraordinary circumstances" applies for two reasons. First, Contemporary claims its due process argument could only be made to a court of appeals. Ample precedent belies this argument.

In *United States v. L.A. Tucker Truck Lines, Inc.*, the Supreme Court applied a procedural bar similar to § 10(e) to a due process challenge. 344 U.S. 33, 36-37 & n.6, 73 S. Ct. 67, 68-69 & n.6 (1952). The appellee alleged that the Interstate Commerce Commission (ICC) referred his case to a hearing examiner that had not been appointed pursuant to the Administrative Procedure Act. *Id.* at 35, 73 S. Ct. at 68. The appellee failed to raise that objection to the ICC, but rather raised it for the first time during judicial review. *Id.* Although no statutory procedural bar existed, the Court found that precedent and similar statutes (including § 10(e) of the Act) required "objections to the proceedings of an administrative agency be made while [the agency] has opportunity for correction in order to raise issues reviewable by the courts." *Id.* at 37, 73 S. Ct. at 69. Because the appellee's objection was not timely, it was procedurally barred.

In *Goya Foods of Florida*, we applied § 10(e) to bar a due process objection. 525 F.3d at 1127 n.13. Goya argued that the Board violated its due process right to full and fair notice by deciding issues not alleged in the complaint.

5

We found that Goya's failure to object to the alleged due process violation before the Board prevented consideration of it by this Court. *Id.*

Finally, in *Alabama Roofing & Metal Co.*, the former Fifth Circuit applied § 10(e) to bar a due process objection. 331 F.2d at 967. Alabama Roofing alleged the Board erred by not rejecting the trial examiner's "obviously" biased and prejudiced findings. Because the allegation of bias was raised for the first time before the Fifth Circuit, the court found the statutory bar precluded review. *Id.* *L.A. Tucker Truck Lines, Inc.*, *Goya Foods of Florida*, and *Alabama Roofing & Metal Co.* all involved new allegations of due process deprivations which were found procedurally barred. There is no support for Contemporary's argument that its due process challenge could only be made to a court of appeals.

Second, Contemporary contends extraordinary circumstances exist because a motion for reconsideration raising its due process argument would have been futile. This Court has discussed futility under § 10(e) in only one case. *NLRB v. Robin Am. Corp.*, 667 F.2d 1170, 1171 (5th Cir. Unit B 1982). In *Robin American*, the Board requested enforcement of an order that required Robin American to notify and bargain with its employees' union prior to closing any department of its manufacturing facilities. Because "the Fifth Circuit had imposed a (general) duty to bargain over [all] partial closing decisions," Robin American

6

did not object to the breadth of this order. *Robin Am. Corp.*, 667 F.2d at 1171 (internal quotations omitted). In *First National Maintenance Corp. v. NLRB*, the Supreme Court overruled the Fifth Circuit, finding that a refusal to bargain over an economically-motivated closing decision would not violate the Act. 452 U.S. 666, 101 S. Ct. 2573 (1981). Following *First National*, Robin American objected for the first time to the breadth of the Board's order. We held that because the Board's order was fully in accord with Fifth Circuit precedent at the time it was issued, any objection to the Board would have been "futile, if not frivolous." *Robin Am. Corp.*, 667 F.2d at 1171. The futility of objecting to the Board's order based on binding circuit precedent presented an extraordinary circumstance warranting relief from the statute's procedural bar.

*Robin American* is not controlling in this case because no binding precedent foreclosed Contemporary from making its due process objection to the Board in a motion for reconsideration. *See Woelke & Romero Framing, Inc.*, 456 U.S. at 666. *Robin American* establishes, however, that the status of the law at the time the omitted objection could have been filed with the Board is important to determining futility.

Two circuits have recognized additional instances that establish futility. In *Kitchen Fresh, Inc. v. NLRB*, the United States Court of Appeals for the Sixth

7

Circuit found the extraordinary circumstance of futility. 716 F.2d 351 (6th Cir. 1983). However, the court observed that "only when the Board has unequivocally rejected a party's position by expressly refusing to follow the authority or line of authorities relied upon by that party" would a failure to object be excused as futile. *Id.* at 358 n.13. The Sixth Circuit distinguished prior instances when the Board "had simply not considered the question," finding retrospectively "fruitless" motions distinct from futile motions. *Id.*

In *W&M Properties of Connecticut, Inc. v. NLRB*, the United States Court of Appeals for the District of Columbia Circuit refused to find futility. 514 F.3d 1341, 1346 (D.C. Cir. 2008). The court found that only "patent futility" would excuse a failure to object to the Board. Patent futility could be established only by "pointing to instances in which the agency had already rejected [the] contested argument in other proceedings." *Id.* The court held that "an assessment of the Board's likely disposition, relying on highly subjective indicia . . . is insufficient to prove patent futility because it does not show that a motion for reconsideration was 'clearly doomed' by the agency's rejection of identical arguments." *Id.*

*Robin American*, *Kitchen Fresh*, and *W&M Properties* highlight that the futility of an omitted objection must be shown as of the time it could have been made to rise to the level of extraordinary circumstances. Although establishing the

Board's subsequent rejection of a similar argument may retrospectively establish probable futility, "probable futility cannot be equated with extraordinary circumstances." *Keystone Roofing Co. v. OSHA*, 539 F.2d 960, 964 (3d Cir. 1976) (applying extraordinary circumstances under 29 U.S.C. § 660(a)); *see Power Plant Div., Brown & Root v. OSHA*, 673 F.2d 111, 115 (5th Cir. Unit B 1982) (probable futility insufficient to establish extraordinary circumstances under 29 U.S.C. § 660(a)).

In support of its futility argument, Contemporary cites only one order in which the Board rejected a similar due process challenge, *Fred Meyer Stores*, NLRB Order, Case No. 19-CA-32311, 2011 WL 826176, at *1 (Feb. 25, 2011).[4] The Board issued its order in *Fred Meyer Stores* after Contemporary could have moved for reconsideration, making that order irrelevant to the futility analysis in this case. Beyond *Fred Meyer Stores*, Contemporary has provided nothing but "highly subjective indicia" that its motion would have been futile. *See W&M Props.*, 514 F.3d at 1346. Because Contemporary has failed to demonstrate extraordinary circumstances, this Court lacks jurisdiction to consider

[4] Although the Board's summary order does not reference the nature of the objection, the motion made by Fred Meyer Stores included a due process challenge substantially similar to Contemporary's argument. *See* Resp't's Mot. Recons. at 2-3, *Fred Meyer Stores*, NLRB Case No. 19-CA-32311 (Oct. 21, 2010), *available at* http://mynlrb.nlrb.gov/link/document. aspx/09031d45803be01f.

Contemporary's challenge to the Board's procedures.  We now turn to the merits of the Board's petition.

## III.  STANDARD OF REVIEW

This Court reviews the NLRB's factual findings to ensure that they are supported by substantial evidence on the record as a whole.  29 U.S.C. § 160(e); *NLRB v. U.S. Postal Serv.*, 526 F.3d 729, 732 (11th Cir. 2008).  Substantial evidence is more than a mere scintilla of evidence.  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bickerstaff Clay Prods. Co. v. NLRB*, 871 F.2d 980, 984 (11th Cir. 1989). Provided any inferences drawn from the record were plausible, this Court may not overturn the Board's determination even if it would make a different finding under a *de novo* review.  *Cooper/T. Smith, Inc. v. NLRB*, 177 F.3d 1259, 1261 (11th Cir. 1999).  This is an exceedingly narrow standard of review designed to allow disruption of the NLRB's decision only when the NLRB exercises its discretion "in an arbitrary or capricious manner."  *Daylight Grocery Co. v. NLRB*, 678 F.2d 905, 908 (11th Cir. 1982).

## IV. FACTS

Contemporary concedes it refused to bargain, but challenges the Board's bargaining-unit determination.  To put Contemporary's argument in context, we

10

detail some aspects of Contemporary's operations and its employees' responsibilities.

Contemporary is a Mercedes-Benz dealership that offers maintenance for Mercedes automobiles. Maintenance is performed by employees of the "fixed operations department." Contemporary employs approximately 75 non-supervisory fixed operations employees, including service technicians, detail technicians, service advisors, parts advisors, parts runners, parts shipping associates, a trainee, a greeter, a courtesy driver, a porter, service appointment coordinators, and various payment administrators. Contemporary divides some of these positions into three "teams." Each team consists of 9 to 13 service technicians, 2 service advisors, 1 team leader, and 1 parts advisor. All fixed operations employees share changing room and locker facilities.

*A. Service Technicians*

Service technicians include both general technicians and alignment/tire/wheel specialists. Alignment/tire/wheel technicians perform primarily alignment/tire/wheel work. Some general technicians perform occasional tire work. All service technicians are paid on a "flat rate" system, whereby they receive compensation based on the number of hours Mercedes-Benz allots for completion of a particular job. All service technicians are paid between

$16 and $26 per "flat rate hour." Their exact rate is determined by assessed skill sets, performance reviews, and production bonuses. Skill-set adjustments function on a categorical system, which rates technicians from D (lowest) to A (highest). Service technicians receive semiannual performance reviews by their team leaders and the service director. Any skill-set adjustment or performance-related raise is recommended by the team leader, approved by the service director, and then approved by the general manager. Service technicians are also eligible for production bonuses based on their average daily flat-rate hours. In addition to identical pay and performance review structures, all service technicians wear a blue uniform and are required to be certified by Mercedes-Benz. Further, all service technicians use valuable and specialized tools and machinery while performing mechanical work on automobiles. Although Mercedes-Benz does not give a certification for each machine used by the alignment/tire/wheel technicians, Contemporary provides on-the-job training for those machines.

*B. Detail Technicians*

Detail technicians are tasked with cleaning vehicles and removing damage to paint. They do not perform mechanical tasks or automotive repairs. Detail technicians wear a blue uniform identical to the service technicians, and are paid between $12 and $14 per "flat rate hour." However, they do not share the skill-set

and production-bonus components of the service technicians' compensation scheme.

## C. "Trainee"

Contemporary's "trainee" is not in training for a service technician position, but rather performs window tinting and applies edge guards on vehicle doors. Thus, the trainee never diagnoses or repairs vehicles, or uses the service technician's equipment. Further, the trainee is compensated on a simple hourly rate with a guarantee of 35 hours per week, and does not wear the blue uniform worn by service and detail technicians.

## D. Service Advisors

Contemporary's team system strives to create a highly integrated, streamlined unit that provides an exceptional customer service experience. The service advisors provide the friendly face for the team system by greeting customers, conducting initial vehicle inspections, writing work orders, assisting in estimate preparation, and performing minor vehicular maintenance, such as changing wiper blades or light bulbs. Their pay is commission-based, and dependent in part on the work performed by their service technician and parts "teammates."

*E. Approved Bargaining Unit*

The Board found that the service technicians were an appropriate bargaining unit. The Board concluded the unit was supported under either a craft-unit or traditional-unit analysis. Contemporary insists that the unit must consist of only the general technicians and exclude the alignment/tire/wheel technicians or, alternatively, the unit must include every non-supervisory employee in their fixed operations department.

## V. DISCUSSION

"The NLRA does not establish an 'absolute rule of law' as to what constitutes an appropriate bargaining unit. Rather, it delegates to the Board the responsibility to make a reasonable determination supported by its own precedent and evidence in the record." *Country Ford Trucks, Inc. v. NLRB*, 229 F.3d 1184, 1189 (D.C. Cir. 2000) (citation omitted). "Where more than one unit would be appropriate, the Board need not pick the most appropriate unit, provided that the unit selected is also appropriate." *NLRB v. Episcopal Cmty. of St. Petersburg*, 726 F.2d 1537, 1541 (11th Cir. 1984). "A unit is truly inappropriate if, for example, there is no legitimate basis upon which to exclude certain employees from it." *Blue Man Vegas, LLC v. NLRB*, 529 F.3d 417, 421 (D.C. Cir. 2008). The burden rests with Contemporary to demonstrate that the Board's determination lacked

substantial evidentiary support or was otherwise arbitrary, capricious, or an abuse of discretion. *Episcopal Cmty. of St. Petersburg*, 726 F.2d at 1541. However, "it is not our province to insure an abstract and academic consistency in Board decisions." *NLRB v. Deaton Inc.*, 502 F.2d 1221, 1228 (5th Cir. 1974).

The Board found the bargaining-unit determination supported by both a craft-unit and traditional-unit analysis. We will examine both grounds in turn.

*A. Craft Unit*

"A craft unit is one consisting of a distinct and homogeneous group of skilled journeymen craftsmen, who, together with helpers or apprentices, are primarily engaged in the performance of tasks which are not performed by other employees and which require the use of substantial craft skills and specialized tools and equipment." *Burns & Roe Servs. Corp.*, 313 NLRB 1307, 1308 (1994). To determine whether a proposed group of employees constitutes a separate craft unit, the Board considers whether: (1) the employer assigns work according to need rather than on craft or jurisdictional lines; (2) the group participates in a formal training or apprenticeship program; (3) the group's work is functionally integrated with the work of excluded employees; (4) the group's duties overlap with the duties of excluded employees; and (5) the group shares common interests with excluded employees, including wages, benefits, and cross-training. *Id.*

15

Contemporary contends that the craft-unit determination disregarded the Board's order in *W.R. Shadoff*, 154 NLRB 992 (1965), and, in light of Contemporary's modern integrated approach to automotive maintenance, improperly applied the Board's decisions in *Fletcher Jones Chevrolet*, 300 NLRB 875 (1990), and *Country Ford Trucks, Inc. v. NLRB*, 330 NLRB 328 (1999), *enf'd*, 229 F.3d 1184 (D.C. Cir. 2000). However, integration is only one factor to be considered in making a craft-unit determination. *Burns & Roe Servs. Corp.*, 313 NLRB at 1308. After reviewing the record as a whole, we conclude that substantial evidence supports the Board's determination that the proposed bargaining unit was an appropriate craft unit under the Act. Although Contemporary disputes certain factual findings made by the Board, sufficient independent relevant evidence exists to adequately support the Board's conclusion. For example, only service technicians receive compensation under a flat-rate pay scheme that includes unique skill-set adjustments; only service technicians receive production bonuses; all service technicians receive distinct performance evaluations and supervision; and all service technicians perform mechanical automotive tasks not performed by other fixed operations employees that require skill and the use of specialized tools and equipment. Contemporary has not met its burden of demonstrating the Board's craft-unit determination

16

lacked substantial evidentiary support.  *See Episcopal Cmty. of St. Petersburg*, 726 F.2d at 1541.

*B. Traditional Unit*

The order may also be enforced under the alternative traditional-unit ground. "Under traditional unit criteria, the critical consideration in determining the appropriateness of a proposed unit is whether the employees comprising the unit share a community of interest." *Episcopal Cmty. of St. Petersburg*, 726 F.2d at 1541 (quotations omitted).  In determining a community of interest, "the Board looks to such factors as bargaining history, operational integration, geographic proximity, common supervision, similarity in job function, and degree of employee interchange."  *NLRB v. J.C. Penney Co.*, 559 F.2d 373, 375 (5th Cir. 1977).  In addition, the Board considers the method and level of compensation, number of hours worked, and other terms and conditions of employment.  *Ore-Ida Foods, Inc.*, 313 NLRB 1016, 1019-20 (1994).

Contemporary argues that the extent of integration requires inclusion of all fixed operations department employees in the bargaining unit.  However, the integration of employees and the interchanges between them are only two factors in the traditional-unit analysis.  Even if the character of the modern automotive service department represents a significant shift from the past, this Court must

defer to the special competency of the Board in rectifying the conflicting interests of labor and management. *NLRB v. J. Weingarten, Inc.*, 420 U.S. 251, 265-66, 95 S. Ct. 959, 968 (1975). Further, Contemporary has not met its burden of demonstrating the Board's traditional-unit determination lacked substantial evidentiary support. *See Episcopal Cmty. of St. Petersburg*, 726 F.2d at 1541.

## VI. CONCLUSION

We lack jurisdiction to consider Contemporary's due process challenge. Moreover, Contemporary has not met its burden of demonstrating the Board's determination lacked substantial evidentiary support. Therefore, the Board's petition is granted and its order is enforced.

**GRANTED.**