PRYOR, Circuit Judge,
dissenting:
“[I]n reweighing the facts and setting aside the Board’s order,” the majority opinion “improperly substitute^] its own views of the facts for those of the Board,” NLRB v. Enter. Ass’n of Steam, Hot Water, Hydraulic Sprinkler, Pneumatic Tube, Ice Mach. & Gen. Pipefitters of N.Y. & Vicinity, Local Union No. 638, 429 U.S. 507, 532, 97 S.Ct. 891, 905, 51 L.Ed.2d 1 (1977), and fails to adhere to our deferential standard of review. As directed by Congress, “[t]his Court reviews the ... factual findings [of the National Labor Relations Board] to ensure that they are supported by substantial evidence on the record as a whole.” NLRB v. Contemporary Cars, Inc., 667 F.3d 1364, 1370 (11th Cir.2012) (citing 29 U.S.C. § 160(e)). Substantial evidence is “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,” id. (quoting Bickerstaff Clay Prods. Co. v. NLRB, 871 F.2d 980, 984 (11th Cir.1989)), but it “is more than a mere scintilla of evidence,” id. “Provided any inferences drawn from the record were plausible, this Court may not overturn the Board’s determination even if it would make a different finding under a de novo review.” Id. (citing Cooper/T. Smith, Inc. v. NLRB, 177 F.3d 1259, 1261 (11th Cir.1999)). “This is an exceedingly narrow standard of review designed to allow disruption of the ... decision [of the Board] only when the [Board] exercises its discretion ‘in an arbitrary or capricious manner.’ ” Id. (quoting Daylight Grocery Co. v. NLRB, 678 F.2d 905, 908 (11th Cir.1982)). Although “a split in the circuits has developed about the degree of deference that should be accorded to the [Board] on its determination that an employee is a ‘supervisor’ under [section] 2(11) of the [National Labor Relations Act],” Cooper/T. Smith, Inc., 177 F.3d at 1262 n. 3, our Court has refused to make “judicial adjustments to [the] statutory standard of review [because] we believe the wiser course is a robust application of the standard that has typified review of Board decisions,” id. at 1262.
Substantial evidence in three ways supports the findings by the Board that the licensed practical nurses at Lakeland lack any supervisory authority using independent judgment. 29 U.S.C. § 152(11). First, substantial evidence supports the finding by the Board that the licensed practical nurses lack the authority to discipline, suspend, or effectively recommend the termination of certified nursing assistants. Second, substantial evidence supports the finding by the Board that the licensed practical nurses do not responsibly direct certified nursing assistants. Third, substantial evidence supports the finding by the Board that the licensed practical nurses do not assign certified nursing assistants using independent judgment.

A. Substantial Evidence Supports the Finding by the Board that the Licensed Practical Nurses Lack the Authority to Discipline, Suspend, or Effectively Recommend the Termination of Certified Nursing Assistants.

The majority opinion faults the Board for “meticulously excluding] or disregarding] record evidence, which, when taken into account, compels” the finding that the licensed practical nurses possess *1351 the authority to discipline, suspend, and effectively recommend the termination of certified nursing assistants, Majority Opinion at 1337, but the majority opinion fails to mention significant testimony that supports the contrary finding by the Board. Although Lakeland did not call any licensed practical nurses as witnesses to testify at the hearing about whether they possessed supervisory authority, the Board did. The licensed practical nurse the Board called provided unequivocal testimony that the licensed practical nurses neither possess nor exercise supervisory authority.
Rebecca Ward, a licensed practical nurse who had worked as a licensed practical nurse at Lakeland for ten years and was “one of the most senior [licensed practical nurses] at [Lakeland],” testified that she did not consider herself to be a supervisor, and that neither she nor any other licensed practical nurse had attended daily management meetings. Ward had never hired, fired, transferred, or promoted a certified nursing assistant. Ward had never disciplined a certified nursing assistant. Ward had never suspended a certified nursing assistant, and she had never been instructed that she had the right to suspend certified nursing assistants. On one occasion, Ward issued a level one coaching form to a certified nursing assistant who Ward felt “was rude to a resident,” but Ward did so only after she discussed the situation with her weekend supervisor, Sharon Stein, who is a registered nurse. Stein “instructed” Ward to issue the level one coaching form to the certified nursing assistant, and both Stein and Ward met with the certified nursing assistant to discuss the form. In the light of Ward’s testimony, the Board could have drawn a plausible inference that the licensed practical nurses lack the authority to discipline, suspend, or effectively recommend the discharge of certified nursing assistants.
Putting aside Ward’s testimony, the evidence that the majority opinion cites to support its conclusion that the licensed practical nurses possess the authority to discipline, suspend, and effectively recommend the termination of certified nursing assistants does not compel that finding. The majority contends, for example, that the testimony of the director of nursing, Gartha Swearingen, establishes that the licensed practical nurses have the power to discipline, suspend, and effectively recommend the discharge of certified nursing assistants, id. at 1337-38, but a review of Swearingen’s testimony establishes that her statements about whether the licensed practical nurses possess that authority using independent judgment were, at best, ambiguous. After counsel for Lakeland provided Swearingen with a copy of the level two coaching form about an incident in which a resident was burned after Trade Stevens, a certified nursing assistant, allowed the resident to smoke while wearing an oxygen mask, counsel for Lakeland asked questions about the role that the licensed practical nurse who signed the form played in the investigation and termination of Stevens. Swearingen stated that Sheena Smith, the licensed practical nurse, was “involved” in the suspension and termination of Stevens, but Swearingen’s testimony does not compel a finding that the licensed practical nurse used independent judgment during her undefined “involvement” with the suspension and termination of Stevens:
Lakeland: So [Stevens] was suspended, and there was an investigation conducted?
Director of Nursing: Yes, there was.
Lakeland: Okay. Now, what was the role of the [licensed practical nurse] in [Stevens’s] case? In this situation?
*1352 Director of Nursing: The [licensed practical nurse] did the termination.
Lakeland: And [the licensed practical nurse] was involved in the termination process?
Director of Nursing: Yes, she was involved in it.
Lakeland: Was [the licensed practical nurse] also involved in the investigation process?
Director of Nursing: Yes, she was. Lakeland: Now, Kelly Brady’s signature is there as well. Who’s that?
Director of Nursing: Yes. She, on 4/13/09, she was the administrator.
Lakeland: Okay. So she signed off on [Stevens’s level two coaching form] as well, though, right?
Director of Nursing: Yes.
Lakeland: But it was the [licensed practical nurse] who was involved in both the investigation and the decision to terminate this [certified nursing assistant]? Director of Nursing: As part of the investigation, yes, [the licensed practical nurse] was involved, yes.
A plausible inference can be drawn from Swearingen’s testimony that the licensed practical nurse who signed Stevens’s level two coaching form played some role in the investigation, suspension, and termination of Stevens, but Swearingen’s testimony does not compel a finding that the licensed practical nurse took an adverse employment action against Stevens using independent judgment. And even if it did, this isolated incident of a licensed practical nurse playing a role in the suspension of a certified nursing assistant together with the one other similar incident that the director of nursing described, would not have required the Board to find that the licensed practical nurses are supervisors. We have stated that “nearly everyone at one time or another, under some condition, tells someone else what to do, but that one who engages in an isolated incident of supervision is not necessarily a supervisor under the Act.” TRW-United Greenfield Div. v. NLRB, 716 F.2d 1391, 1395 (11th Cir.1983).
Tammy Baxter, a day shift supervisor and registered nurse who had previously performed the same role at Lakeland as the licensed practical nurses, provided more detail regarding the level two coaching form that Smith issued to Stevens, but Baxter’s testimony also fails to compel a finding that Smith suspended Stevens using independent judgment:
Lakeland: Did Ms. Smith relay to you that Ms. Stevens was suspended?
Baxter: Yes. She told me she was suspended.
Lakeland: Okay. Did she relay to you how Ms. Stevens came to be suspended? In other words, she suspended her?
Baxter: I don’t remember her saying exactly what happened at the time she was suspended. She just told me that she was suspended and that she wanted her terminated.
The Board was not required to find that the licensed practical nurses at Lakeland are supervisors on the basis of this ambiguous testimony regarding sporadic incidences of discipline by the licensed practical nurses.
In the light of Ward’s testimony and the testimony of Swearingen and Baxter, a conflict in the evidence exists about whether the licensed practical nurses possess the authority to discipline, suspend, and effectively recommend the termination of certified nursing assistants, and the Board was entitled to resolve that conflict. The Board drew a plausible inference from this evidence that the licensed practical nurses lack that authority, and our “exceedingly narrow standard of review,” Contempo *1353 rary Cars, Inc., 667 F.3d at 1370, requires us to enforce the order of the Board. But the majority opinion instead substitutes its view of the facts for the contrary finding by the Board.
B. Substantial Evidence Supports the Finding by the Board that the Licensed Practical Nurses Do Not Responsibly Direct Certified Nursing Assistants.
The majority opinion maintains that, although no evidence was introduced that a licensed practical nurse at Lakeland has been disciplined or discharged because of her failure to supervise a certified nursing assistant, Lakeland established a “prospect” that licensed practical nurses can be disciplined for failing to direct certified nursing assistants, see Majority Opinion at 1344, but the record does not compel a finding of that “prospect.” Substantial evidence supports the decision of the Board that Lakeland failed to prove that licensed practical nurses can be held accountable for the actions of the certified nursing assistants.
Although an employer can establish responsible direction by presenting evidence that a purported supervisor faces the prospect of adverse consequences for the actions of a subordinate, see In re Oakwood Healthcare, Inc., 348 NLRB 686, 692 (2006), the Board was presented with evidence that the licensed practical nurses face no prospect of adverse consequences for the failings of the certified nursing assistants. The Board heard evidence that certified nursing assistants had engaged in gross misconduct — for example, Stevens allowed a resident to smoke while wearing an oxygen mask, which led to a serious injury to the resident — but no licensed practical nurse had been held accountable for that misconduct. As the Seventh Circuit recently explained, “[wjhere a lower level employee performs inadequately, and the purported supervisor is in fact not held accountable, it highly supports a finding that the purported supervisor is not actually at risk of suffering adverse consequences.” Rochelle Waste Disposal, LLC v. NLRB, 673 F.3d 587, 596 (7th Cir.2012). A reasonable mind would expect that the licensed practical nurse who was allegedly accountable for Stevens’s misconduct would have faced some adverse consequence for not preventing the serious injury to the resident who had smoked while wearing an oxygen mask. The Board was entitled to draw a plausible inference that, because no licensed practical nurse had been held accountable for that misconduct, the licensed practical nurses at Lakeland do not responsibly direct the certified nursing assistants. But the majority opinion instead substitutes its view of the facts for the contrary finding by the Board.

C. Substantial Evidence Supports the Finding by the Board that the Licensed Practical Nurses Lack the Authority to Assign Certified Nursing Assistants Using Independent Judgment.

The majority opinion provides no persuasive support for its conclusion that the licensed practical nurses exercise independent judgment in scheduling certified nursing assistants. “[F]or an assignment function to involve independent judgment, the putative supervisor must select employees to perform specific tasks on the basis of a judgment about the individual employee’s skills.” Cooper IT. Smith, Inc., 177 F.3d at 1265. The parties do not dispute that the “responsibility for staffing and scheduling of [certified nursing assistants] lies, first and foremost, with a staffing coordinator who reports to the Director of Nursing,” Majority Opinion at 1347-48, and that, when the licensed practical nurses prepare assignment sheets on *1354 the weekend “they do so at least in part based on the information the staffing coordinator has already placed on the assignment sheets,” id. at 1348. But the majority opinion nevertheless concludes that the licensed practical nurses use independent judgment to assign certified nursing assistants.
The majority opinion “find[s] untenable the Board’s position that [the licensed practical nurses] mechanically follow established procedure in assigning and reassigning [certified nursing assistants], even when they are the highest-ranking staff on the premises,” id. at 1349, but this reasoning fails. “Although on the ... night ... shifts the licensed practical nurses are the highest-ranking employees on the premises, this does not ipso facto make them supervisors.” NLRB v. Res-Care, Inc., 705 F.2d 1461, 1467 (7th Cir.1983), abrogated on other grounds by NLRB v. Health Care & Ret. Corp. of Am., 511 U.S. 571, 114 S.Ct. 1778, 128 L.Ed.2d 586 (1994). “A night watchman is not a supervisor just because he is the only person on the premises at night ----” Id. The majority opinion reasons that the licensed practical nurses must exercise independent judgment to assign certified nursing assistants when they are the highest-ranking staff on the premises because Swearingen testified that licensed practical nurses “are considered to be leaders of their team,” Majority Opinion at 1349, but that vague testimony did not compel the Board to find that the licensed practical nurses have the authority to assign certified nursing assistants using independent judgment. Although the licensed practical nurses were sometimes the highest-ranking staff on the premises, the record establishes that the “Director of Nursing is on call 24 hours per day, seven days per week,” id. at 1347, and it is undisputed that the scheduling coordinator exercised the primary authority for scheduling certified nursing assistants. Based on this evidence, the Board was entitled to draw the plausible inference that the licensed practical nurses do not exercise independent judgment in scheduling certified nursing assistants. But again the majority substitutes its view of the facts for the contrary finding by the Board.
For all the foregoing reasons, I respectfully dissent. Our standard of review bars us from reweighing the evidence. I would deny the petition for review and enforce the order of the Board because substantial evidence supports its findings.